UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 10-1083
(1:09-cv-02702-JFM)

_____

In Re: DENISE A. CIOTTI,

        Debtor.

------------------------

STATE OF MARYLAND, Peter Franchot, Comptroller of Maryland,

        Plaintiff - Appellee,

    v.

DENISE A. CIOTTI,

        Defendant - Appellant,

    and

CHARLES R. GOLDSTEIN,

        Trustee.

_____

O R D E R

_____

    The Court amends its opinion filed March 8, 2011, as follows:

    On page 4, second and sixth lines from end of page -- the reference to "§ 532(a)(1)(B)" is corrected to "§ 523(a)(1)(B)."

For the Court - By Direction

/s/ Patricia S. Connor
            Clerk

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: Denise A. Ciotti,

*Debtor.*

State of Maryland, Peter
Franchot, Comptroller of
Maryland,

*Plaintiff-Appellee,*

v.

Denise A. Ciotti,

*Defendant-Appellant,*

and

Charles R. Goldstein,

*Trustee.*

No. 10-1083

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, District Judge.
(1:09-cv-02702-JFM)

Argued: January 27, 2011

Decided: March 8, 2011

Before TRAXLER, Chief Judge, and KING and
WYNN, Circuit Judges.

Affirmed by published opinion. Chief Judge Traxler wrote the opinion, in which Judge King and Judge Wynn joined.

---

## COUNSEL

**ARGUED:** Daniel Mark Press, CHUNG & PRESS, PC, McLean, Virginia, for Appellant. Brian L. Oliner, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Annapolis, Maryland, for Appellee. **ON BRIEF:** Douglas F. Gansler, Attorney General of Maryland, Baltimore, Maryland, for Appellee.

---

## OPINION

TRAXLER, Chief Judge:

Denise Ciotti appeals a district court order reversing a bankruptcy order declaring that her Maryland state income tax liability for the tax years 1992-1996 had been discharged in bankruptcy. Finding no error, we affirm.

I.

In 1996 Ciotti filed Maryland state income tax returns for the 1992, 1993, 1994, 1995, and 1996 tax years. Ciotti later filed for Chapter 7 bankruptcy on April 9, 2007. She received her discharge, and her case was subsequently closed.

In 1998 the Internal Revenue Service ("IRS") issued a Letter of Determination making adjustments to each of Ciotti's returns, significantly increasing her federal adjusted income for each of the 1992-1996 tax years. Inasmuch as Maryland taxable income is based upon federal adjusted income, Ciotti was required under Maryland law to report the amount of the changes to her federal adjusted income to Maryland tax

authorities (and explain any errors that she believed the IRS made). *See* Md. Code Ann., Tax-Gen. § 13-409(b). Although Ciotti, in fact, did not report the changes to the Maryland authorities, the IRS forwarded its determination to the Maryland Comptroller. Based on the information the IRS provided, the Comptroller made adjustments to Ciotti's state returns that resulted in an assessment of more than $500,000 in taxes, penalties, and interest.

In February 2009, Ciotti successfully moved to reopen her bankruptcy case and filed a complaint seeking a declaration that her Maryland income tax liabilities for 1992 through 1996 had been discharged. The Maryland Comptroller responded that the tax liabilities were excepted from discharge under 11 U.S.C.A. § 523(a)(1)(B) (West Supp. 2010), which prohibits discharge of a tax debt "with respect to which a return, or equivalent report or notice, if required . . . was not filed or given." The bankruptcy court subsequently granted judgment on the pleadings to Ciotti, *see* Fed. R. Civ. P. 12(c); Fed. R. Bankr. P. 7012(b), concluding that the report that § 13-409 required Ciotti to file did not constitute an "equivalent report or notice" within the meaning of § 523(a)(1)(B). On appeal, the district court reached the opposite conclusion and reversed the bankruptcy court judgment.

## II.

Ciotti now argues that the district court erred in ruling that her tax debt was not discharged. We disagree.

The question before us is the legal issue of the proper application of § 523(a)(1)(B) on established facts. We review de novo the judgment of a district court sitting in review of a bankruptcy court, reviewing the bankruptcy court's legal conclusions de novo as well. *See Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 130 (4th Cir. 1999).

Although we traditionally interpret exceptions to discharge narrowly, *see id.*, we have an "obligation to interpret statutory

language in a manner that effectuates congressional intent," *In re Price*, 562 F.3d 618, 628 (4th Cir. 2009) (internal quotation marks omitted). We conclude that the district court did just that in ruling that § 523(a)(1)(B) excepted Ciotti's Maryland tax debt from discharge.

As originally enacted as part of the Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549 (1978), the statute provided that a discharge under Chapter 7 did "not discharge an individual debtor from any debt – (1) for a tax . . . (B) with respect to which a return, if required – (i) was not filed"; or was filed late and within 2 years of filing the bankruptcy, or was fraudulent or evasive. This exception reflected Congress's attempt to balance the

> three-way tension [that] exists among (1) general creditors, who should not have the funds available for payment of debts exhausted by an excessive accumulation of taxes for past years; (2) the debtor, whose "fresh start" should likewise not be burdened with such an accumulation; and (3) the tax collector, who should not lose taxes which he has not had reasonable time to collect or which the law has restrained him from collecting.

S. Rep. No. 95-989, at 13 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5800. The exception also embodied the bankruptcy policy that "[i]n general, tax claims which are nondischargeable, despite a lack of priority, are those to whose staleness the debtor contributed by some wrong-doing or serious fault." S. Rep. No. 95-989, at 14, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5800. After Congress enacted § 523(a)(1)(B), several courts considered whether a failure to file reports similar to the one § 13-409 requires constituted the failure to file "a return," such that the corresponding tax liability would be excepted from discharge, and almost all of them determined that § 523(a)(1)(B) did not except the tax liability from discharge. *Compare Dahmer v. United States*

*(In re Dahmer)*, 336 B.R. 784, 789 (Bankr. W.D. Mo. 2006) (holding that taxpayer's failure to follow state requirement that he report change in federal income tax did not except state tax liability from discharge), *State of Cal. Franchise Tax Bd. v. Jerauld (In re Jerauld)*, 208 B.R. 183, 189 (B.A.P. 9th Cir. 1997) (similar); *Olson v. United States (In re Olson)*, 174 B.R. 543, 547-48 (Bankr. D. N.D. 1994) (similar), *and Blackwell v. Commonwealth of Va. Dep't of Taxation (In re Blackwell)*, 115 B.R. 86, 88-89 (Bankr. W.D. Va. 1990) (similar), *with Blutter v. United States Dep't of IRS (In re Blutter)*, 177 B.R. 209, 211-12 (Bankr. S.D.N.Y. 1995) (holding that failure to report a change in federal taxable income, as required by state law, excepted state tax liability from discharge).

In 2005, Congress, attempting to reduce the spiraling cost to society of bankruptcies, enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23 (2005). *See* H.R. Rep. No. 109-31, at 90-92 (2005) (explaining that the legislation was motivated by four factors: the "recent escalation of consumer bankruptcy filings," the "significant losses . . . associated with bankruptcy filings," the fact that the "bankruptcy system has loopholes and incentives that allow and—sometimes—even encourage opportunistic personal filings and abuse," and "the fact that some bankruptcy debtors are able to repay a significant portion of their debts"). In amending § 523(a)(1)(B) in particular, Congress made it applicable not only to the failure to file a required return, but also to the failure to file or give an "equivalent" required "report or notice." Thus, as amended, § 523(a)(1)(B) provides that a discharge under Chapter 7 "does not discharge an individual debtor from any debt – (1) for a tax . . . (B) with respect to which a return, *or equivalent report or notice,* if required – (i) was not filed *or given*"; or was filed or given late and within 2 years of filing the bankruptcy, or was fraudulent or evasive. 11 U.S.C. § 523(a)(1)(B) (new language underlined). It is apparent from the changes that Congress determined that the same policy reasons that justify precluding the discharge of tax debt when the debtor

failed to file a return also justify precluding the discharge of the tax debt when the debtor failed to file or give a required report or notice corresponding to that debt. *See Collier on Bankruptcy* ¶ 523.07 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010) ("The reference to the failure to provide 'notice' means that if a debtor is obligated under nonbankruptcy law to file an amended return or give notice to a governmental unit of an amendment or correction to a prior filed federal tax return, the failure to do so will render nondischargeable any corresponding tax liability to the governmental unit." (footnote omitted)).

Ciotti argues against this interpretation but offers no plausible alternative meaning for the amendment. She argues that Congress amended § 523(a)(1)(B) in order to allow dischargeability of tax debt for debtors who failed to file a required return but nevertheless gave or filed an equivalent notice or report. Congress, however, had no apparent motivation to make such a change, and, in any event, the language of the amendment is not susceptible to that reading. Congress amended the statute to refer to the failure to file or give "a return, *or equivalent report or notice,* if required." In so doing, Congress clearly expanded the class of requirements that, when they are not met, preclude dischargeability. Ciotti fails to satisfactorily explain what sort of reports or notices Congress targeted with its amendment if it was not the very sort that are the subject of this case.

Ciotti contends that her failure to file a § 13-409 report did not trigger application of § 523(a)(1)(B) because the required report was not sufficiently similar to a return that the report could be considered an "equivalent report or notice." The Code provides that "return," in this context, "means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements)." 11 U.S.C.A. § 523(a). Under the relevant precedent,

> [I]n order for a document to be considered a 'return,' under either the bankruptcy or the tax laws, it must

(1) purport to be a return; (2) be executed under penalty of perjury; (3) contain sufficient data to allow calculation of tax; and (4) represent an honest and reasonable attempt to satisfy the requirements of the tax laws.

*Moroney v. United States (In re Moroney)*, 352 F.3d 902, 905 (4th Cir. 2003). Ciotti notes that a § 13-409 report need not be submitted under penalty of perjury or even signed. She also argues that it need not contain sufficient data to allow a calculation of state tax liability because § 13-409 does not require taxpayers to explain the bases on which their federal tax liability was adjusted. She also points out that, unlike a return, the report that § 13-409 requires must include an explanation of any errors taxpayers believe the IRS made in increasing their federal tax liability.

We conclude, however, that the report required by § 13-409 is much more similar to a return than Ciotti represents. First, despite the lack of a requirement that a § 13-409 report be signed, Maryland law provides that giving false or misleading information in such a report with the intent to evade payment or collection of the tax constitutes a misdemeanor punishable by a fine of up to $5,000 and imprisonment of up to 18 months. *See* Md. Code Tax–Gen. § 13-1024(a). Also, notwithstanding Ciotti's argument that a § 13-409 report need not contain the information necessary to compute a taxpayer's adjusted state tax liability, the applicable Maryland regulation in fact requires that the report must include a "complete copy of the federal audit including any exhibits attached to it." Md. Code Regs. 03.04.02.11. Finally, the fact that § 13-409 also requires that the taxpayer provide information *additional* to that which would be found in a return, namely an explanation of any disagreement the taxpayer has with the federal adjustment, hardly supports the contention that the report is not an "equivalent report" for purposes of § 523(a)(1)(B). In the end, we conclude that the report required by § 13-409 is quite similar to a return in several respects and is, indeed, the type of

report to which Congress intended § 523(a)(1)(B) would apply.

Ciotti alternatively maintains that even if the § 13-409 report is the type to which § 523(a)(1)(B) can apply, the report was nonetheless "given" to the Maryland Comptroller when the IRS forwarded its audit determinations. We disagree. Section 13-409 states,

> Within 90 days after the [IRS] issues to a person the final determination [increasing federal taxable income], *the person shall submit* to the tax collector a report of federal adjustment that includes:
>
> (1) a statement of the amount of the increase; and
>
> (2) if the person contends that the final federal determination is erroneous, an explanation of the reasons for the contention.

Md. Code Tax-Gen. § 13-409(b) (emphasis added). Maryland law is clear that the IRS's reporting to Maryland the amount of a taxpayer's increased federal liability does not satisfy the taxpayer's statutory obligation to report the information herself. *See Brown v. Comptroller of the Treasury*, 747 A.2d 232, 237 (Md. Ct. Spec. App. 2000). Thus, it is plain that the report required by § 13-409 was neither filed nor given as required by the Maryland statute, even if some or all of the information required in the report was given to the Maryland Comptroller by the IRS.

### III.

In sum, we hold that the district court correctly ruled that Ciotti's state tax debt was nondischargeable.

*AFFIRMED*