T.C. Memo. 2012-287

UNITED STATES TAX COURT

ROBERT SCOTT FLINT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1222-11L.                    Filed October 9, 2012.

Robert Scott Flint, pro se.

<u>John D. Davis</u>, for respondent.

MEMORANDUM OPINION

MORRISON, <u>Judge</u>:  The IRS Office of Appeals issued to the petitioner,

Robert Scott Flint, a notice of determination sustaining the filing of a notice of

federal tax lien.  The purpose of the notice of federal tax lien was to secure

liabilities for income tax and section-6702 penalties for each of the tax years 2002,

**[*2]** 2003, 2004, and 2005. Pursuant to sections 6320(c) and 6330(d)(1), Flint seeks review of the determination of the Office of Appeals. All references to sections are to the Internal Revenue Code of 1986, as amended. We refer to the respondent as the IRS.

## Background

Despite having earned substantial wages during 2002, 2003, 2004, and 2005, Flint submitted a Form 1040, U.S. Individual Income Tax Return, to the IRS for each of these years reporting that he earned no wages and had no federal-income-tax liability. Flint attached documents to the Forms 1040 making frivolous claims as to why he was not liable for income tax. For example, he asserted that there is no law making anyone liable for the federal income tax. He also asserted that he was personally exempt from federal income tax because he did not work for the federal government.

The table below sets forth the approximate dates that Flint submitted the Forms 1040 and the amounts of wages that Flint earned in each of the years:

| [*3] Year | Date submitted | Wages earned |
|:---:|:---:|:---:|
| 2002 | Mar. 31, 2003 | $39,782 |
| 2003 | Apr. 9, 2004 | 63,406 |
| 2004 | Apr. 8, 2005 | 64,860 |
| 2005 | Jan. 23, 2007 | 63,530 |

The IRS issued notices of deficiency for all four years, all of which Flint received. After Flint failed to file a Tax Court petition contesting the notices of deficiency, the IRS assessed the deficiencies that it determined in the notices issued to Flint.

The IRS also determined that the Forms 1040 Flint filed were frivolous. It assessed frivolous-return penalties under section 6702 for each of the Forms 1040.

On March 23, 2009, the IRS filed a notice of federal tax lien against Flint's property for the following amounts:

| [*4]Unpaid balances listed on notice of federal tax lien | | | |
|---|---|---|---|
| Year | Type of liability | Date of assessment | Amount |
| 2002 | Income tax | Mar. 28, 2005 | $1,727.13 |
| | Sec.-6702 penalty | Sept. 25, 2006 | 1,000.00 |
| 2003 | Income tax | Aug. 22, 2005 | 17,290.29 |
| | Sec.-6702 penalty | Nov. 15, 2004 | 500.00 |
| 2004 | Income tax | Sept. 18, 2006 | 18,933.51 |
| | Sec.-6702 penalty | Sept. 12, 2005 | 500.00 |
| 2005 | Income tax | Feb. 4, 2008 | 14,323.44 |
| | Sec.-6702 penalty | Nov. 12, 2007 | 500.00 |

The notice of federal tax lien was filed with the County Recorder of Ada County, Idaho. On March 24, 2009, the IRS notified Flint that it had filed the notice of federal tax lien.

On April 12, 2009, Flint requested a collection-review hearing with the Office of Appeals. On his request form, he stated that he requested a hearing because "I doubt my liability".

On June 29, 2009, Flint filed for protection under chapter 7 of the Bankruptcy Code, 11 U.S.C., with the U.S. Bankruptcy Court for the District of Idaho. His bankruptcy case was docketed as In re Flint, case No. 09-01863-TLM.

On July 8, 2009, the IRS Office of Appeals (hereinafter "Appeals" or "Office of Appeals") wrote a letter to Flint stating that its Fresno office had

[*5] received his collection-review case. The letter stated that because Flint had filed for bankruptcy protection, his collection-review case would be transferred to the Appeals office nearest to his residence.

On August 11, 2009, Settlement Officer Karen O'Neal of the Seattle office of the Office of Appeals sent a letter to Flint stating that she had received his case for consideration. The letter stated: "Any action with regard to the CDP hearing request is suspended pending resolution of the bankruptcy case."

On October 1, 2009, Flint's chapter-7 bankruptcy was terminated, and on the same day Flint received a discharge from the U.S. Bankruptcy Court. The U.S. Bankruptcy Court's discharge order is not in our trial record.

On October 12, 2010, O'Neal made a note in her files that she believed that none of Flint's liabilities that were subject to the filing of the notice of federal tax lien were discharged in his bankruptcy proceeding.

On October 12, 2010, O'Neal wrote a letter to Flint scheduling a telephone conference with him for November 16, 2010. In the letter O'Neal informed Flint that she could "consider whether you owe the amount due, but only if you have not otherwise had an opportunity to dispute it with Appeals or did not receive a statutory notice of deficiency." The letter also made the following request: "Regarding the liability you are raising: If you did not receive a statutory notice of

[*6] deficiency for tax years 2002, 2003 and 2004 please send me your original

Form 1040 for these tax periods. Please sign them and date them with a current

date." Flint apparently did not send any Forms 1040 or copies of Forms 1040 to

O'Neal.

On November 16, 2010, Flint had a telephone conference with O'Neal.

O'Neal's notes from the telephone conference include the following:

> Phone conference with taxpayer. Advised him that we were having a
> CDP hearing for the LIEN. Asked him how I could help since I had
> not received any of the requested information. He said that he didn't
> know since he doesn't owe the balance due. Asked him why he hadn't
> filed the original returns like I had asked him to do in my letter and he
> said he filed all of his returns by 4-15-02 showing no tax due and he
> does not know why we are saying there is tax due.

On December 15, 2010, the Office of Appeals issued a notice of

determination sustaining the filing of the notice of federal tax lien to secure liabilities

for income tax and a section-6702 penalty for each of the tax years 2002, 2003,

2004, and 2005. The "BRIEF BACKGROUND" section of the notice contained the

statement:

> You were raising liability as one of your concerns. We advised you
> that if you had not received a statutory notice of deficiency for tax
> years 2002, 2003 and 2004 to please send us the original Form 1040
> for these tax periods.

> On November 16, 2010 you called for your scheduled conference. We
> asked you what you wanted to discuss and you said that you did

**[\*7]** not owe the balance due. You were asked why you had not provided the original returns for tax years 2002, 2003 and 2004 and you said you had already done that. \* \* \* You were advised that according to our records you do have a balance due and because you do not believe that, there was nothing we could do for you in Appeals.

Under the heading "<u>Challenges to the Existence of Amount of Liability</u>", the notice stated: "You did dispute your liability and were given an opportunity to provide Form 1040's for tax years 2002, 2003 and 2004." The notice stated that the notice of federal tax lien balanced the efficient collection of tax with Flint's legitimate concern that any collection action be no more intrusive than necessary.

The notice of determination correctly stated that Flint did not then have a pending bankruptcy case and that he did not have a pending bankruptcy case when he was notified that the notice of federal tax lien had been filed. The notice of determination did not discuss the U.S. Bankruptcy Court's discharge order or the effect of the order on the collection action.

On January 14, 2011, Flint filed a Tax Court petition challenging the notice of determination. Flint resided in Idaho when he filed his petition. In his petition Flint contended that his liabilities were discharged in bankruptcy. The petition also claimed that:

[*8]  •  The amounts of the assessments were inaccurate.

  •  The IRS violated the Internal Revenue Code by auditing and assessing Flint without his participation.

  •  The Forms 1040 that Flint filed were correct.

  •  Flint was not required to file a Form W-4, Employee's Withholding Allowance Certificate, under section 3401(a) and (c).

On April 29, 2011, the Tax Court notified Flint and the IRS that Flint's case would be tried during the trial session beginning on October 3, 2011, in Boise, Idaho.

On September 2, 2011, Flint moved for a six-month continuance of the trial date because of the demands of his job. The Court denied the continuance.

The case was tried on October 3, 2011. The parties executed a stipulation of facts and a supplemental stipulation of facts, both of which are binding. Flint called himself as a witness. He testified that he did not earn any wages during the years in question because he was not a federal employee or an officer of a corporation. Directly after the trial the IRS moved for penalties under section 6673. The IRS reasoned that, apart from his bankruptcy-discharge argument, Flint's arguments were frivolous.

**[*9]**   In his brief filed after trial Flint argues that:

- It was unnecessary for him to give tax returns to the settlement officer because he had already filed returns with the IRS.

- His tax liabilities had been discharged in bankruptcy.

- The IRS failed to respond to his many requests for the section of the Internal Revenue Code that imposes liability for an income tax.

- He did not earn wages within the meaning of section 3401(a) because, not being a federal employee or a corporate officer, he was not an "employee".

- He is not subject to the federal income tax because he is not a "citizen of the United States" but a "naturalized American domiciled in the State of Idaho".

- Forms W-2, Wage and Tax Statement, can only be filed "against" a person engaged in business or a public office holder.

- He never participated in any taxable activities.

In opposing the penalty Flint makes some additional points:

- The nonfraudulent nature of his tax returns is demonstrated by the fact that he was never prosecuted for a tax crime.

[*10] • A June 16, 2000 memorandum from Deborah J. Butler, IRS Assistant Chief Counsel (Field Service) to Jody Trancer, IRS Assistant Acting District Counsel (Brooklyn), demonstrates that a tax return containing only zeros is considered a valid tax return.

• The IRS official that assessed his taxes had not been delegated the authority to do so.

• The IRS did not assess his taxes using the correct assessment form, Form 23C, Assessment Certificate--Summary Record of Assessments.

Discussion

In order to collect a tax liability, the IRS must first make an assessment. See secs. 6201, 6303(a), 6321, 6331; William D. Elliott, Federal Tax Collections, Liens, and Levies, para. 2.01[1], at 2-4 (2d ed. 2008). The IRS assesses tax by recording the tax liability on its books. Sec. 6203; 26 C.F.R. sec. 301.6203-1. After assessing tax, the IRS is required by statute to demand payment within 60 days. Sec. 6303(a). If the taxpayer refuses to pay, a lien arises in favor of the United States on all the taxpayer's property. Sec. 6321. The lien relates back to the time of assessment. Sec. 6322; Elliott, supra, para. 9.03[1], at 9-6. The lien continues until the liability is satisfied or becomes unenforceable by lapse of time. Sec. 6322.

**[*11]** For the lien to be valid against four classes of creditors (purchasers, holders of security interests, mechanic's lienors, and judgment-lien creditors), the Secretary of Treasury must file a notice of federal tax lien with the appropriate office of the local government for the area in which the property is located. Sec. 6323(a), (f). Within five business days after filing, the Secretary must provide written notice to the taxpayer. Sec. 6320(a). The taxpayer has 35 days from the day of the filing of the notice of federal tax lien to request an administrative hearing before the IRS Office of Appeals. Secs. 6320(a)(3)(B), 6320(b)(1); 26 C.F.R. sec. 301.6320-1(c)(1). At the hearing, the taxpayer may raise any relevant issue relating to the unpaid tax or the notice of federal tax lien, including spousal defenses, challenges to the appropriateness of the collection action, and offers of collection alternatives. Secs. 6320(c), 6330(c)(2). The taxpayer may also challenge the underlying tax liability, but only if the taxpayer did not receive a notice of deficiency or did not otherwise have an opportunity to dispute the liability. Secs. 6320(c), 6330(c)(2)(B); Sego v. Commissioner, 114 T.C. 604, 609 (2000). The issues properly raised by the taxpayer must be considered by the Appeals Office in its determination. Secs. 6320(c), 6330(c)(2), (3) and (4). The taxpayer may seek judicial review of the determination in this Court. Secs. 6320(c), 6330(d)(1). If the validity of the underlying tax liability is properly at

[*12] issue, we review that issue de novo. Sego v. Commissioner, 114 T.C. at

610. Other issues we review for abuse of discretion. Id. In reviewing a

determination by the Office of Appeals to proceed with the collection of a liability

that the taxpayer contends has been discharged in bankruptcy, we review the

determination for abuse of discretion. See Swanson v. Commissioner, 121 T.C.

111, 119, 125 (2003).

With the exception of the bankruptcy-discharge argument, Flint's arguments

are meritless. See, e.g., Davies v. United States, 2000-2 U.S. Tax Cas. (CCH)

para. 50,545 at 85,025 (9th Cir. 2000) ("no provision of law limits income tax to

federal government employees").[1]

When, as in this case, the Office of Appeals has sustained a collection

action to collect liabilities that the taxpayer contends were discharged in

bankruptcy, an initial task is to determine whether the liabilities were discharged.

See Washington v. Commissioner, 120 T.C. 114, 119, 121 (2003) (Office of

---

[1]Flint received notices of deficiency for all four years, 2002-05, and was therefore barred from using the collection-review hearing to challenge his underlying tax liabilities. See secs. 6320(c), 6330(c)(2)(B).

Flint did not offer any collection alternatives at the hearing. The Office of Appeals did not abuse its discretion in not considering any collection alternatives. See 26 C.F.R. sec. 301.6320-1(f)(2), Q&A-F3; Delgado v. Commissioner, T.C. Memo. 2011-240, slip op. at 8-9.

**[*13]** Appeals determined that taxpayer's liabilities had not been discharged in bankruptcy and sustained filing of notice of federal tax lien; Court determined that liabilities were not discharged); Swanson v. Commissioner, 121 T.C. at 119, 125 (Office of Appeals determined that taxpayer's liabilities had not been discharged in bankruptcy and sustained proposed levy; Court determined that liabilities were not discharged). Although the notice of determination did not expressly reflect the determination that the liabilities sought to be collected were not discharged, it is apparent from O'Neal's notes that the Office of Appeals presumed that the debts were not discharged in bankruptcy.

The liabilities that the IRS seeks to collect fall into two categories: (1) income-tax liabilities, and (2) section-6702 penalties. We consider whether each type of liability was discharged.

We first analyze whether Flint was discharged from his income-tax liabilities. Title 11 U.S.C. sec. 727(a) (2006) provides that a debtor who files a bankruptcy petition under chapter 7 of the Bankruptcy Code is to be granted a discharge unless one of the grounds for denial of discharge enumerated in that chapter exists. Title 11 U.S.C. sec. 727(b) provides in relevant part that, except as provided in 11 U.S.C. sec. 523, a discharge under 11 U.S.C. sec. 727(a) discharges a debtor from personal liability for all debts incurred before the bankruptcy

**[*14]** petition was filed.  See United States v. Hatton (In re Hatton), 220 F.3d 1057, 1059-1060 (9th Cir. 2000).  The IRS contends that Flint's income-tax liabilities were not discharged.  The IRS relies on 11 U.S.C. sec. 523(a)(1)(B), which provides that tax liabilities with respect to which a return was not filed are not discharged.  The IRS is correct.  The Forms 1040 Flint submitted are not valid tax returns.  They reported that Flint earned no wages even though he earned substantial wages.  The Forms 1040 do not qualify as returns because they do not represent an honest and reasonable attempt to satisfy the requirements of the tax laws.  See Swanson v. Commissioner, 121 T.C. at 123 (citing Beard v. Commissioner, 82 T.C 766, 777 (1984), aff'd, 793 F.2d 139 (6th Cir. 1986)); Cabirac v. Commissioner, 120 T.C. 163, 169 (2003).[2]  Because the Forms 1040 were not valid returns, Flint's income-tax liabilities were not discharged.  See Frey v. Commissioner, T.C. Memo. 2004-87.

We now consider whether Flint was discharged from his liabilities for the section-6702 penalties.  The IRS concedes that the penalties were discharged in

---

[2]Swanson applied the Beard test.  The Beard test is appropriate in bankruptcy-discharge cases, such as this one, that are appealable to the Ninth Circuit, despite United States v. Long, 618 F.2d 74, 75-76 (9th Cir. 1980).  See Oman v. Commissioner, T.C. Memo. 2010-276.  The applicability of the Beard test in the bankruptcy-discharge context survives the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23.  See Maryland v. Ciotti (In re Ciotti), 638 F.3d 276, 280 (4th Cir. 2011).

[*15] bankruptcy. The concession is found in two statements in the IRS's brief.

The first statement is: "Respondent [the IRS] does not dispute that the frivolous

return penalties assessed against petitioner [Flint] with respect to his submissions for

tax years 2002 through 2005 under section 6702 were discharged in his Chapter 7

bankruptcy." The second statement is:

> In his trial memo, and at trial, respondent conceded that the frivolous
> return penalties assessed against petitioner for tax years 2002, 2003,
> 2004 and 2005 under I.R.C. § 6702 were discharged in bankruptcy.
> The penalties have been abated and the NFTL [notice of federal tax
> lien] will be withdrawn to the extent that it relates to those penalties.
> Consequently, that portion of the NFTL pertaining to the section 6702
> penalties for 2002 to 2005 is not at issue.

The portion of the pretrial memorandum (also known as a trial memorandum) that is

referenced in the second statement reads as follows:

> Respondent concedes that petitioner's frivolous filing penalties were
> discharged, and thus does not owe the amounts listed as frivolous
> penalties for the taxable years 2002 through 2005. Consequently, the
> NFTLs, insofar as they pertain to the tax penalties for 2002 through
> 2005 in this case, will be withdrawn. The remaining liability issue in
> this case is whether petitioner remains liable for his 2002 through 2005
> income taxes.

Both parties agree that the section-6702 penalties were discharged in bankruptcy.

We assume that Flint's section-6702 penalties were discharged in bankruptcy. We

do not ordinarily reach issues that are not disputed by the parties.

**[*16]** Having resolved the question of whether the liabilities to be collected were discharged in bankruptcy (the income-tax liabilities were not discharged, but pursuant to the IRS's concession, the section-6702 penalties were discharged), we now consider whether the Office of Appeals erred in sustaining the filing of the notice of federal tax lien.

We first consider the filing of the notice of federal tax lien as it relates to the income-tax liabilities. Flint's only plausible attack on this portion of the determination is that the income-tax liabilities were discharged in bankruptcy. They were not discharged. Therefore we sustain this portion of the determination.

We next consider the filing of the notice of federal tax lien as it relates to the section-6702 penalties. The Office of Appeals sustained the filing of the notice of federal tax lien because it apparently assumed that the section-6702 penalties were not discharged in bankruptcy. The Office of Appeals did not reason that the federal tax lien survived bankruptcy. That would have been an alternative ground for sustaining the filing of the notice of federal tax lien. A discharge generally does not affect secured claims. David G. Epstein et al., Bankruptcy, 461-462 (1993). In Iannone v. Commissioner, 122 T.C. 287, 292-293 (2004), we held that even though the taxpayer received a discharge in bankruptcy, any property that belonged to the taxpayer "when he filed his bankruptcy petition

**[\*17]** is still encumbered in rem by a Federal tax lien." We further held that the Office of Appeals did not abuse its discretion in sustaining a levy to collect the in rem liability. Id. at 294. Here, by contrast, the IRS does not contend that the in rem nature of the liability justified the determination of the Office of Appeals. Although the IRS defends the determination in general terms (e.g., "The Settlement Officer did not abuse her discretion in determining to uphold the filing of the NFTL"), the IRS does not provide a specific reason for sustaining the determination regarding the section-6702 liabilities. The portions of the IRS's brief that discuss the effect of the bankruptcy proceeding only undercut the Office of Appeals' determination. First, the IRS's admission that it has since abated the section-6702 penalties implies that the Office of Appeals should have abated the penalties in the first place. Second, the IRS's promise to partially withdraw the notice of federal tax lien suggests that the Office of Appeals erred in not doing so previously. It is up to the IRS to satisfactorily explain why the determination of the Office of Appeals was correct. Tax Ct. R. Pract. & Proc. 151(e)(5). Absent such an explanation, it is appropriate for us not to sustain the determination with respect to the section-6702 penalties.

Finally, we consider the IRS's motion to impose a section-6673 penalty on Flint because his positions in this proceeding have been frivolous. Given the

**[*18]** IRS's concessions regarding the section-6702 penalties and Flint's cooperation in the stipulation process, we decline to impose a section-6673 penalty. However, we warn Flint that the Court could impose a section-6673 penalty should he file any more frivolous court papers in this case or in future Tax Court cases.

We have considered all of the parties' arguments. Those not discussed have been found without merit or relevance.

To reflect the foregoing discussion,

<u>An appropriate order and</u>

<u>decision will be entered</u>.