**IN RE: Tom A. MCBRIDE, Jean D. McBride, Debtors**

**Tom A. McBride and Jean D. McBride, Plaintiffs**

v.

**City of Kettering, Ohio, Defendant**

**Case No. 11–30672**
**Adv. No. 13–3215**

United States Bankruptcy Court, S.D. Ohio, Western Division.

Signed November 24, 2015

Entered November 25, 2015

---

Darlene E. Fierle, Springboro, OH, Ira H. Thomsen, Springboro, OH, for Plaintiffs.

Matthew T. Schaeffer, Columbus, OH, for Defendant.

## DECISION OF THE COURT GRANTING DEFENDANT CITY OF KETTERING'S SECOND MOTION FOR SUMMARY JUDGMENT [Adv. Doc. 74]

Lawrence S. Walter, United States Bankruptcy Judge

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 157(b)(2) and 1334 and the standing General Order of Reference in this District.

This matter is before the court on the Second Motion for Summary Judgment filed by Defendant City of Kettering, Ohio ("City") [Adv. Doc. 74]; the Response filed by Plaintiff-Debtors Tom A. McBride and Jean D. McBride ("McBrides") [Adv. Doc. 77] and the City's Reply [Adv. Doc. 78].

The McBrides filed the complaint in this adversary proceeding requesting a determination that certain pre-petition tax obligations owed to the City for the tax years 1998 through 2002 were subject to discharge in their Chapter 7 bankruptcy case. The City answered denying that the tax obligations were subject to discharge and, subsequently, the City filed its first motion for summary judgment. In the first motion, the City argued that the McBrides filed City tax returns that did not constitute "returns" for dischargeability purposes making the tax obligations for the tax years at issue nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(B). More specifically, the City argued that the tax documents were insufficient to constitute returns because one was untimely and all of the documents significantly underreported income and taxes for the years at issue. On April 9, 2015, the court denied the City's first motion concluding that the question of whether the McBrides' tax documents qualified as "returns" could not be answered on summary judgment [Adv. Doc. 66]. In a footnote, the court observed that certain City Tax Code provisions require taxpayers to file amended City tax returns when adjustments are made to federal tax liability and that the failure to file amended returns may render the corresponding tax debt nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(B); however, it was unclear whether the provisions were complied with in this case [Id., n.11].

On July 29, 2015, the City filed its second motion for summary judgment. In

the second motion, the City argues that the McBrides did not comply with City Tax Code § 191.05(G)(2) and its amended tax return requirement and, consequently, their City tax obligations are nondischargeable. In their response, the McBrides admit that they did not file amended returns but argue that either the requirement to file amended returns was not applicable or that the City's assessment process and the McBrides' filing of other documents with the City satisfied the requirement.

Based on the analysis that follows, the court grants summary judgment to the City. The City Tax Code required the McBrides to file amended returns for the years 1998 through 2002 upon the United States Tax Court's final determinations of their federal tax liability for those years. Their failure to file the required amended City tax returns renders their corresponding tax obligation nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(B).

### FACTUAL BACKGROUND

The facts described herein are not in dispute.[1] During the tax years in question Debtor Tom McBride worked as a State Farm Insurance agent operating within the City of Kettering. The McBrides filed joint tax returns for the tax years 1998 through 2002 that are the subject of this dispute.[2] The specific details of their City tax filings are as follows:

1) On November 24, 1999, the McBrides filed their 1998 City income tax return (the "1998 Return"). The 1998 Return shows total income of $2,052, with income tax due of $36.

2) On October 19, 2000, the McBrides filed their 1999 City income tax return (the "1999 Return"). The 1999 Return shows total income of $1,734, with income tax due of $30.

3) On September 5, 2001, the McBrides filed their 2000 City income tax return (the "2000 Return"). The 2000 Return shows total income of $2,296, with income tax due of $40.

4) On July 3, 2002, the McBrides filed their 2001 City income tax return (the "2001 Return"). The 2001 Return shows total income of $1,666, with income tax due of $29.

5) On April 17, 2003, the McBrides filed their 2002 City income tax return (the "2002 Return"). The 2002 Return shows total income of $2,228, with income tax due of $39.

[Adv. Doc. 74, Exs. 2–6 (collectively the "City Tax Returns") ].

On February 11, 2003, the United States Tax Court found the McBrides' 1998 federal taxes to be deficient in the amount of $121,524 (plus penalties) and their 1999 taxes to be deficient in the amount of $136,665 (plus penalties) [Id., Ex. 7].

In a subsequent May 25, 2006 decision, the United States Tax Court found the McBrides to have deficiencies in their federal income tax due for the taxable years 2000, 2001, and 2002 in the amounts of $31,099, $33,259, and $44,639 respectively [Id., Ex. 8, p. 1]. The Tax Court further held, as agreed to by the McBrides:

It is further stipulated that the parties agree that: the JDM Asset Management Company (TIN 31–xxxxxxx) and

---

1. Because of the similarity of issues in the City's two motions for summary judgment, many of the facts stated herein are a reiteration of the facts from the court's prior decision on the City's first motion for summary judgment.

2. The complaint includes allegations regarding the dischargeability of taxes owed for the year 1997, but those taxes are not raised as an issue on summary judgment.

the McBride Charitable Trust (TIN 31–xxxxxxx) and the TAM Services LLC (TIN 31–xxxxxxx) ["the Trusts"] are nominees or alter egos of petitioners; all assets held in the name of the Trusts are held by the Trusts for the benefit of the petitioners; there was no substantial change in the way business and personal matters were held before and after the formation of the Trusts; and, certain, personal living expenses of petitioners have been paid by the Trusts.

It is further stipulated that the parties agree that the Trusts will be disregarded for Federal income tax purposes.

[*Id.*, Ex. 8, p. 2]. The McBrides do not assert that they appealed these decisions.

The income reported by the McBrides on their deficient federal income tax returns for the years 1998 through 2002 formed the basis for the figures used in their City tax returns filed for those same years [*Id.*, Ex. 9; Adv. Doc. 77, p. 8, ¶ 11].

The McBrides filed no amended City returns for the tax years 1998 through 2002 [Adv. Doc. 74, Ex. 15, p. 285]. However, in 2003, the City began contacting the McBrides about deficiencies in their City tax returns. On June 19, 2003, the City sent a letter to the McBrides noting that the City had adjusted their City tax returns for the years 1997 through 2002 and that they had a new balance due [Adv. Doc. 77, Ex A]. The letter was followed by a July 30, 2003 assessment letter from the City adjusting taxable income and assessing taxes, penalties, and interest due for the tax years 1997 through 2002 with a total balance due of $22,847.00 [*Id.*, Ex. B]. A third assessment letter for those tax years was sent August 12, 2005 with a total balance due of $37,943.31 [*Id.*, Ex. C].

On August 25, 2005, the McBrides sent correspondence to Mr. Martin Van Oss, a Financial Analyst with the City, in response to the City issuing a subpoena for the McBrides to appear at Mr. Van Oss's office with their 2003 and 2004 Federal returns [*Id.*, Ex. D]. In the letter, the McBrides note their problems with their earlier Federal returns for the years 1997 through 2002, asserting that they "fell victim to a promoter of abusive trust schemes" and that they retained legal counsel to address their federal tax problems [*Id.*]. They state that they are committed to refiling income tax returns that properly reflect their true tax liabilities [*Id.*].

In the August 25, 2005 correspondence, the McBrides further explain their current status with respect to their federal tax liability noting that they need "to get to the right venue" with the IRS to present amended returns that reflect their true tax liabilities [*Id.*]. They state that they have "filed for a Collection Due Process Hearing" with the IRS as to the 1997–1999 tax years but a date for the conference has not been scheduled. [*Id.*] They further note that they have filed a petition to the United States Tax Court for the 2000–2002 tax years and are waiting for a court date. [*Id.*] The McBrides state that "we expect that these years [2000–2002] will be settled through the IRS appeals office prior to going to trial." [*Id.*] They note their hope of combining all years 1997 through 2004 "in a collection alternative proposal to the IRS." [*Id.*]

On May 1, 2007, Mr. Van Oss, sent Tom McBride a fax with a copy of the August 12, 2005 Assessment letter [*Id.*, Ex. E]. On the fax cover sheet, Mr. Van Oss states the following:

Tom, Copy of 8/12/05 letter showing the "Balance Due" as of that date. Penalty & Interest have not been updated since that date. Nor have the taxable income amounts been adjusted to reflect any

changes or agreements you may have made with the IRS.

[*Id.*].

In July of 2007, Mr. Van Oss faxed Tom McBride an Assessment Letter dated July 25, 2007 with a total due of $46,046.13 [*Id.*, Ex. F]. It was accompanied by copies of a Request for Abatement of Penalty and/or Interest form and an Application for a Deferred Payment Plan, both of which were filled out and signed by the McBrides [*Id.*]. With the forms, the McBrides requested an abatement of the interest and penalties associated with their tax obligation and a request for a deferred payment arrangement for the tax years 1997 through 2002 with monthly payments of $200 [*Id.*, Affidavit of Tom McBride and Ex. F].

On August 3, 2007, Mr. Van Oss issued a letter to the McBrides acknowledging that the City approved their request for a deferred payment plan as well as the request for an abatement of the penalty, but not the interest, associated with the tax obligation for the years 1997 through 2002 [*Id.*, Ex. G]. The letter notes that the abatement of penalty is contingent upon the timely payment of the balance due according to the deferred payment plan which included a balloon payment at the end of the plan [*Id.*, Exs. F and G]. The McBrides signed the agreement [*Id.*, Ex. H].

On September 11, 2009, the City sent the McBrides a letter enclosing a second Application for a Deferred Payment Plan in regards to their outstanding tax/interest liability of approximately $22,558.00 remaining after conclusion of the first Deferred Payment Plan [*Id.*, Ex. I]. On September 14, 2009, the McBrides signed the second application to continue making monthly payments on the remaining balance [*Id.*, Ex. J]. This second deferred payment plan was approved by the City as acknowledged in a letter from Mr. Van Oss dated October 9, 2009 [*Id.*, Ex. K].

The McBrides made the $200.00 monthly payments required under the deferred payment plans from August of 2007 through February of 2011 [*Id.*, Affidavit of Tom McBride and Ex. L].

## SUMMARY JUDGMENT STANDARD

The appropriate standard to address the City's second motion for summary judgment is contained in Fed. R. Civ. P. 56 and incorporated in bankruptcy adversary proceedings by reference in Fed. R. Bankr. P. 7056. Rule 56(a) provides that summary judgment is to be granted by the court "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In order to prevail, the moving party, if bearing the burden of persuasion at trial, must establish all elements of its claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the burden is on the non-moving party at trial, the movant must: 1) submit affirmative evidence that negates an essential element of the nonmoving party's claim or 2) demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *Id.* at 331–32, 106 S.Ct. 2548. Thereafter, the opposing party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 586–88, 106 S.Ct. 1348. Nonethe-

less, mere conclusory allegations or unsupported opinions of the nonmovant are insufficient to defeat a motion for summary judgment. *Id. See also Blaney v. Cengage Learning, Inc.,* 2011 WL 1532032, at *7 (S.D.Ohio Apr. 22, 2011).

## LEGAL ANALYSIS

■ As noted in the court's prior decision, the Bankruptcy Code excepts from a chapter 7 discharge certain debts outlined in 11 U.S.C. § 523. *See* 11 U.S.C. § 727(b). The § 523 exceptions to discharge are to be strictly construed in favor of debtors. *United States v. Storey,* 640 F.3d 739, 743 (6th Cir.2011).

■ In its second motion for summary judgment, the City argues that the McBrides' failure to file amended City tax returns to reflect adjustments to their federal tax returns renders their City tax obligations for the years at issue nondischargeable pursuant to the exception found in 11 U.S.C. § 523(a)(1)(B). This section states:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

\* \* \*

(B) with respect to which a return, *or equivalent report or notice,* if required—

(i) was not filed *or given* [.]

11 U.S.C.A. § 523(a)(*l*)(B)(i) (italics added). The italicized language highlights the amendments to § 523(a)(1)(B)(i) enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The amendments clarify that this provision is applicable not only to the failure to file a required tax return, but also to the failure to file or give an "equivalent report or notice" when one is required. *Id.*; *Comptroller of Maryland v. Ciotti (In re Ciotti),* 638 F.3d 276, 279 (4th Cir.2011). In *Ciotti,* the Fourth Circuit concluded that postBAPCPA, § 523(a)(1)(B) was sufficiently expansive to except from discharge not only tax debts for which no return is filed, but also tax obligations for which the debtor fails to file an amended return, report, or notice when one is required under the pertinent tax laws. *Ciotti,* 638 F.3d at 279–80.

The facts of *Ciotti* are similar to those presented in this case. In 1996, the debtor, Denise Ciotti, filed Maryland state income tax returns for the years 1992 through 1996. *Id.* at 278. In 1998, the Internal Revenue Service ("IRS") issued a Letter of Determination making adjustments to each of Ciotti's returns which significantly increased her federal adjusted income for those tax years. *Id.* Under Maryland state law, Ciotti was required to report the changes in her federal adjusted income to the Maryland taxing authorities. *Id.* (citing Md. Code Ann., Tax–Gen. § 13–409(b)). She did not report the changes as required by state law although the IRS did. *Id.* Based on the information forwarded by the IRS, the Maryland Comptroller made adjustments to Ciotti's state returns that resulted in an assessment of more than $500,000 in taxes, penalties, and interest. *Id.* Ciotti filed a Chapter 7 bankruptcy petition in 2007 and received her discharge. *Id.* After some time, Ciotti reopened the case and filed a complaint seeking a declaration that her Maryland income tax liabilities for 1992 through 1996 were discharged. *Id.*

The Maryland Comptroller asserted that the tax liabilities were excepted from discharge under § 523(a)(1)(B) and, on appeal, the Fourth Circuit agreed. *Id.* The Fourth Circuit held that the language of § 523(a)(1)(B), as amended by BAPCPA, not only precluded the discharge of a tax

debt when the debtor failed to file a return, but also when the debtor failed to file or give a required report, notice, or amended return corresponding to that debt. *Id.* at 279–81. In coming to this conclusion, the Fourth Circuit cited this treatise analysis of § 523(a)(1)(B):

> The reference to the failure to provide 'notice' means that if a debtor is obligated under nonbankruptcy law to file an amended return or give notice to a governmental unit of an amendment or correction to a prior filed federal tax return, the failure to do so will render nondischargeable any corresponding tax liability to the governmental unit.

*Id.* at 280 (citing *Collier on Bankruptcy*, ¶ 523.07 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed., 2010)). Consequently, this court agrees with *Ciotti*, and the decisions of other courts, that unless taxpayers meet their obligation to report adjustments in their federal income tax liability through whatever report, notice, or amended return is required under the state or local tax code, the corresponding tax obligation is nondischargeable pursuant to § 523(a)(1)(B). *Id.* at 281. *See also, Moffitt v. Commonwealth of Mass. (In re Moffitt),* 2013 WL 5441984, at *2–4 (Bankr.W.D.Ky. Sept. 27, 2013) (concluding that the failure to file an amended return with the state of Massachusetts as required by Massachusetts law renders the state tax debt nondischargeable pursuant to § 523(a)(1)(B)); *Shorton v. Commonwealth of Mass. (In re Shorton),* 375 B.R. 26, 32 (Bankr.D.Mass.2007); *Giacci v. United States (In re Giacci),* 213 B.R. 517, 520 (Bankr.S.D.Ohio 1997) (concluding that, even under the pre-BAPCPA language of § 523(a)(1)(B), the failure to file an amended state tax return to reflect federal adjustments as required by state law rendered the state tax debt nondischargeable and "[t]o hold otherwise would be to reward the debtor-taxpayer in bankruptcy court for failing to comply with state tax law requirements").

■ Turning to the facts at hand, the McBrides filed City tax returns for the tax years 1998 through 2002 that were based on the income reported in their federal tax returns filed with the IRS for those same tax years. Subsequently, the United States Tax Court issued decisions in 2003 and 2006 concluding that the McBrides underreported their federal income and taxes for the years 1998 through 2002 and that they owed significant additional federal income taxes for those years [Adv. Doc. 74, Exs. 7–8].

Similar to the Maryland tax provision cited in *Ciotti,* a provision of the City of Kettering Tax Code required the McBrides to file amended returns upon a final determination of federal tax liability that impacts their City tax liability. Specifically, § 191.05(G)(2)[3] of the City Tax Code provides:

> fecting the taxpayer's City of Kettering tax liability, such taxpayer shall make and file an amended City of Kettering return showing income subject to the City of Kettering tax based upon such final determination of Federal tax liability and pay any additional tax shown due thereon or make claim for refund or any overpayment.

City of Kettering Tax Code § 191.05(E)(2) (1988) (copy attached as Ex. 11 to Adv. Doc. 74).

---

**3.** Although the relevant City of Kettering Tax Code provision was revised during the tax years at issue in this decision, the City asserts that the prior version of § 191.05(G), found in § 191.05(E), is substantially similar. Upon review, the court agrees and concludes that the taxpayer's obligation to file an amended return is the same under both the current and prior versions. The prior version states as follows:

> Within three (3) months from the final determination of any Federal tax liability af-

Within three (3) months from the final determination of any federal·tax liability affecting the taxpayer's City tax liability, such taxpayer shall make and file an amended City return showing income subject to the City tax based upon such final determination of federal tax liability and pay any additional tax shown due thereon or make claim for refund or any overpayment.

City Tax Code § 191.05(G)(2)[4] (2000) (copy attached as Ex. 12 to Adv. Doc. 74). It is undisputed that the 2003 and 2006 United States Tax Court decisions determining that the McBrides' federal income and tax liability were underreported "affected" the McBrides' City tax obligation since the McBrides admit to using the figures from their original federal tax returns to calculate their City taxes.

The McBrides argue, however, that the 2003 and 2006 United States Tax Court decisions were not "final" determinations of their federal tax liability and, consequently, the requirement to file amended City returns was not triggered. The McBrides' argument is somewhat convoluted. They do not dispute that they failed to appeal the 2003 and 2006 United States Tax Court decisions determining their federal tax liability. Instead, they point to a ·written statement from Martin Van Oss, a City of Kettering Financial Analyst, on a fax cover sheet dated May 1, 2007:

Tom [McBride], Copy of 8/12/05 letter showing the "Balance Due" as of that date. Penalty & Interest have *not* been updated since that date. Nor have the taxable income amounts been adjusted to reflect any changes or agreements you may have made with the IRS.

[Adv. Doc. 77, Ex. E]. The McBrides assert that this statement is an "acknowledgement" by the City that no final determination of the McBrides' federal tax liability had been made and consequently, they did not need to comply with City Tax Code § 191.05(G)(2). The court rejects the McBrides' argument for two reasons. First, their argument is based on a misconstruction of Mr. Van Oss's words. Mr. Van Oss's statement, and particularly his use of the word "may," suggests that he does not know whether the McBrides have a final determination of their federal tax liability. Of course, he would have known had the McBrides complied with § 191.05(G)(2) and filed amended returns following the determinations by the United States Tax Court. As it stands, however, the McBrides did not comply with this obligation leaving the City to esti-

---

4. The McBrides argue that they did not have to file amended returns because City Tax Code. § 191.05(G)(1) only requires the filing of amended returns "when necessary." City Tax Code § 191.05(G)(1) states:

When necessary, an amended return shall be filed in order to report additional income and pay any additional tax due, or claim a refund of tax overpaid, subject to the requirements and/or limitations contained in Section 191.11. The tax manager shall provide by regulation the format in which such amended return shall be filed....

§ 191.05(G)(1) (copy attached as Ex. 12 to Adv. Doc. 74). This City Tax Code provision is a more general provision applicable any time a taxpayer may have additional income to report or additional tax due. In contrast, City Tax Code § 191.05(G)(2) applies specifically to situations when adjustments have been made to federal tax liability that impact City tax liability mandating the filing of amended returns in those instances. *Compare* City Tax Code § 191.05(G)(1) with § 191.05(G)(2). Because the McBrides' situation involves adjustments to their federal tax liability that impact their City tax liability, the court concludes that the more specific provision, City Tax Code § 191.05(G)(2), applies in this case. *See American Bank, FSB v. Cornerstone Community Bank*, 733 F.3d 609, 614 (6th Cir.2013) (noting that in situations where two statutory provisions appear to apply, it "is a commonplace of statutory construction that the specific governs the general").

mate their taxable income and taxes due through its assessment process and correspondence with the McBrides.

Second, the McBrides have no legal support for the contention that statements made by Mr. Van Oss, an employee of the City, could impact the finality of determinations related to their federal tax liability. Their federal tax liability was determined by the United States Tax Court, not the City, and for the McBrides to challenge the Tax Court's determinations, they would have had to appeal the 2003 and 2006 decisions. *In re Jackson,* 189 B.R. 206, 212 (Bankr.M.D.Ala.1994) (noting that an "unappealed judgment of the Tax Court is a final determination of tax liability upon the entry of judgment by that court."). *See also Donahue v. United States (In re Donahue),* 107 B.R. 146, 150–52 (Bankr. S.D.Ohio 1989) (concluding that a Tax Court decision that embodied an agreed resolution was final and entitled to preclusive effect). Consequently, the court concludes that the United States Tax Court's 2003 and 2006 determinations were, in fact, "final" determinations of the McBrides' federal tax liability that triggered the requirement to file amended City tax returns pursuant to City Tax Code § 191.05(G)(2). The McBrides not only failed to file the amended returns within three months of the 2003 and 2006 Tax Court decisions as required by the City Tax Code, but, in fact, never filed the required amended returns.

■■ Next, the McBrides argue that the requirement to file amended returns was satisfied through the City's assessment process and/or the McBrides' agreement to two deferred payment plans and an abatement of penalties. A similar argument was made by the debtor and rejected by the Fourth Circuit in *Ciotti.* In that case, the debtor argued that, although she failed to comply with the state law requirement of reporting her change in income to the Maryland taxing authority herself, the IRS fulfilled the requirement by giving its audit determinations of her change in income directly to the Maryland Comptroller leading the state to assess taxes against her. *Ciotti,* 638 F.3d at 281. The Fourth Circuit reviewed the relevant Maryland law noting that it requires the "person" whose federal taxable income was adjusted to submit the report of the change in income to the state taxing authority. *Id.* Consequently, "the IRS's reporting to Maryland the amount of a taxpayer's increased federal liability does not satisfy the taxpayer's statutory obligation to report the information herself." *Id.*

Like the Maryland law in *Ciotti,* the City Tax Code provision at issue requires the "taxpayer" to file the amended return upon a final determination of a change in federal tax liability affecting the taxpayer's City tax liability. City Tax Code § 191.05(G)(2). This obligation to file an amended return is a personal obligation of the taxpayer and is not fulfilled even if the same information is obtained by the City through other sources and then used in the City's assessment process. Nor, for that matter, is the obligation to file amended returns satisfied by the McBrides' agreement to deferred payment plans and an abatement of penalties. First, the City Tax Code provision requiring the filing of amended returns does not provide any alternatives that would otherwise satisfy this taxpayer obligation. *See* City Tax Code § 191.05(G)(2). Second, the specific documents cited by the McBrides serve an entirely different purpose than a tax return. On a tax return, a taxpayer is required to self-report income and taxes due based on that income. *See* City Tax Code § 191.05(D) (2000) (attached to Adv. Doc. 74 as Ex. 12). The deferred payment plans and abatement of penalties request-

798

ed and agreed to by the McBrides were not for the purpose of self-reporting income and taxes, but, were, instead, attempts to reduce and/or defer payment of taxes assessed against them by the City. Consequently, these documents are not a substitute for an amended return. *See United States v. Hatton (In re Hatton),* 220 F.3d 1057, 1060–61 (9th Cir.2000) (similarly concluding that neither an installment agreement nor a substitute return prepared by the IRS qualifies as a return for § 523(a)(1)(B) purposes).

The court concludes that the McBrides failed to comply with City Tax Code § 191.05(G)(2) and its requirement to file amended returns. Furthermore, the requirement to file amended returns was not satisfied through the City's assessment process or the McBrides' request for and agreement to an abatement of penalties and two deferred payment arrangements. To hold otherwise would reward noncompliant taxpayers that the taxing authority is forced to assess. Because the required amended returns were not filed, the McBrides' tax obligation owed to Defendant City of Kettering for the tax years 1998 through 2002 is nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(B).

### CONCLUSION

Defendant City of Kettering's second motion for summary judgment [Adv. Doc. 74] is granted. The court concludes that the tax obligation owed by the McBrides to the City of Kettering for the tax years 1998 through 2002 is nondischargeable. pursuant to 11 U.S.C. § 523(a)(1)(B).

**SO ORDERED.**