FILED

DEC 17 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

### UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

In re:                                    )    BAP No.   EC-14-1180-KuKiTa
                                          )
KEVIN WAYNE MARTIN and SUSAN              )    Bk. No.   11-62436
MARTIN,                                   )
                                          )    Adv. No.  12-01131
                    Debtors.              )
_____        )
                                          )
UNITED STATES,                            )
                                          )
                    Appellant,            )
                                          )
v.                                        )    **OPINION**
                                          )
KEVIN WAYNE MARTIN; SUSAN                 )
MARTIN,                                   )
                                          )
                    Appellees.            )
_____        )

Argued and Submitted on November 19, 2015
at Pasadena, California

Filed – December 17, 2015

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable W. Richard Lee, Bankruptcy Judge, Presiding

_____

Appearances:    Boris Kukso argued for appellant United States;
                Appellees Kevin Wayne Martin and Susan Martin
                argued pro se.

_____

Before: KURTZ, KIRSCHER and TAYLOR, Bankruptcy Judges.

KURTZ, Bankruptcy Judge:

1

**INTRODUCTION**

When is a tax return not a tax return? According to an increasing number of courts, including some courts of appeal, the answer is: when the tax return, otherwise wholly compliant with applicable tax laws, is filed a second (or more) late. According to these courts, by way of the 2005 Bankruptcy Code amendments, Congress intended to make a substantial and exceptionally harsh change to nondischargeability law by adding a hanging paragraph at the end of 11 U.S.C. § 523(a)[1] defining the term "return" to exclude any taxpayer filing that does not wholly and strictly comply with all applicable return filing requirements, even if the taxing authority itself could and would forgive that noncompliance. Indeed, the United States rejects this statutory interpretation in this appeal.

The courts adopting a literal construction of the "return" definition more or less admit that their unforgiving view of congressional intent cannot be squared within the context of § 523(a), or even within the narrower context of the hanging paragraph itself, without running into some significant conundrums. The second sentence of the hanging paragraph expressly includes within the definition of "return" some types of returns that the taxing authority prepares on behalf of the taxpayer, when the taxpayer never gets around to it. Why Congress would want to treat a taxpayer who files a tax return a

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

month or a week or even a day late – possibly for reasons beyond his or her control – so much more harshly than a taxpayer who never files a tax return on his or her own behalf is a mystery that literal construction adherents never adequately explain. Nor have they adequately explained why, later on in the second sentence of the hanging paragraph, Congress felt a need to explicitly exclude from the "return" definition another type of return filed by taxing authorities on behalf of taxpayers when that exclusion is superfluous if one accepts a literal construction of the first sentence of the hanging paragraph.

When one looks beyond the hanging paragraph, at the context of the nondischargeability statute as a whole and Congress' scheme for nondischargeable debts, one encounters additional, even-more-serious problems with the literal construction of the "return" definition. Section 523(a)(1)(B)(ii), which pre-existed the 2005 amendments, already contains a specific and carefully-balanced treatment of tax debts associated with untimely-filed tax returns. Literal construction of the "return" definition renders § 523(a)(1)(B)(ii) all but meaningless - reducing the potential application of that provision to a minuscule scope. And, according to the literal construction adherents, Congress intended the "return" definition to accomplish this dramatic re-balancing of the dischargeability of tax debt without a single legislative comment to that effect.

In light of these concerns arising from a contextual reading of the hanging paragraph, we reject the literal construction of the "return" definition. We further conclude that there is binding Ninth Circuit authority predating the 2005 amendments

3

instructing us how to determine when a taxpayer filing should be treated as a return for nondischargeability purposes and that authority was not abrogated by the 2005 amendments.

The bankruptcy court erred because it declined to apply the existing Ninth Circuit test as to what constitutes a "return," so we VACATE the bankruptcy court's ruling declaring the Martins' tax debt dischargeable, and we REMAND so that the bankruptcy court can apply the Ninth Circuit test.

**FACTS**

The facts are undisputed. The Martins did not file their tax returns for 2004, 2005 and 2006 at the time they were due. Consequently, the Internal Revenue Service ("IRS") conducted an audit examination beginning in June 2008 to fix the amount of the Martins' tax liability for those three years. Without the benefit of the Martins' self-reported income tax data in the form of tax returns, the IRS duly followed the deficiency and assessment procedures set forth in the Internal Revenue Code. See 26, U.S.C. § 6201, et seq. In August 2008, following the completion of the audit examination, the IRS issued a notice of deficiency for each of the three tax years.

The Martins did not respond to the notices of deficiency, but the notices did spur the Martins to hire a new accountant to prepare the missing tax returns. In December 2008, the accountant signed and completed the Martins' tax returns for 2004, 2005 and 2006, but the Martins did not get around to signing and filing the tax returns until six months later in June 2009. There is no evidence explaining the reason for the Martins' several-year delay in preparing their 2004, 2005 and

4

2006 tax returns, nor is there any evidence explaining the Martins' delay in signing and filing the completed returns.[2]

_____

[2]While it does not constitute evidence in the strict sense, at the summary judgment oral argument, the Martins attempted to explain the delays. With respect to their initial failure to timely prepare their 2004, 2005 and 2006 tax returns, Ms. Martin stated:

> [W]e had problems with our previous accountant. Her husband died and she had to let us go and -- and so she -- basically we were trying to -- she had her assistant try to finish us up. And she got sick and held on to our taxes for over a year. And we repeatedly tried to get them back from her, and she kept saying she was going to finish them.
>
> And then by the time we realized -- finally we demanded them back, and we had to find a new accountant who had to start fresh. And that was Andrea, and that's when she started reassessing and doing all our taxes to help get us caught up.

Hr'g Tr. (Aug. 29, 2013) at 6:4-15. With respect to the six-month delay in signing and filing the completed returns, the bankruptcy court and Ms. Martin engaged in the following colloquy:

> THE COURT: Why didn't the tax returns get filed [six] months earlier, when the accountant signed them?
>
> SUSAN MARTIN: Because she actually finished them on 12-18-08. And I believe we were waiting for two other years that were behind, '07 and '08, to be completed before we put them all in together.
>
> THE COURT: Why? Why. Why didn't -- why didn't --
>
> SUSAN MARTIN: I don't know. I -- I just feel like we were trying to get it all in at once. I -- I guess that's why we waited. I was wondering the same thing, why we didn't get them in right away. But we had so many back taxes that we were just trying to get them all done. And that's why they sat for a little while.

(continued...)

5

Meanwhile, having not heard from the Martins, the IRS made assessments against the Martins for the 2004, 2005 and 2006 tax years in March 2009.  Thereafter, the IRS twice sent the Martins notices of the unpaid taxes and demands for payment – once in March 2009 and another time in April 2009.  The IRS then gave the Martins notice of its intent to collect the assessed taxes by levy.

Only after the IRS threatened to collect the unpaid taxes did the Martins finally file their 2004, 2005 and 2006 tax returns.  The IRS accepted the untimely returns and adjusted the Martins' tax liability based on the information set forth in the returns.  The IRS adjusted their 2004 tax liability downward by roughly $1,000 (from $18,432 to $17,358), their 2005 tax liability upward by roughly $5,000 (from $9,928 to $14,852), and their 2006 tax liability downward by roughly $5,000 (from $32,133 to $27,010).

The Martins commenced their chapter 7 bankruptcy case in November 2011 and commenced pro se the adversary proceeding from which this appeal arises in July 2012.  By way of their complaint, they sought a determination that their 2004, 2005 and 2006 tax debt was dischargeable.  The IRS responded to the complaint by alleging that the subject tax debt was nondischargeable pursuant to § 523(a)(1)(B)(i), as a tax debt for which a tax return was required but never filed.[3]

_____

[2](...continued)
Hr'g Tr. (Aug. 29, 2013) at 5:7-19.

[3]Ultimately, the IRS conceded the dischargeability of the
(continued...)

6

The IRS filed a summary judgment motion based on the undisputed facts. The bankruptcy court denied the IRS's summary judgment motion and instead, on the undisputed facts, granted judgment in favor of the Martins. In a thoughtful, thorough and detailed memorandum of decision, the bankruptcy court rejected the IRS's legal theories attempting to explain why a tax return filed post-assessment is the functional equivalent of no tax return at all for both tax purposes and nondischargeability purposes.

The bankruptcy court also grappled with the meaning of the word "return" for purposes of the nondischargeability statute, both before and after the 2005 Bankruptcy Code amendments. Ultimately, the bankruptcy court held that the correct standard for determining whether a taxpayer filing qualified as a return for purposes of the nondischargeability statute had not changed as a result of the 2005 amendments. According to the bankruptcy court, the test established in the tax court decision of <u>Beard v. Commissioner</u>, 82 T.C. 766, 774-79 (1984), <u>aff'd</u> 793 F.2d 139 (6th Cir. 1986), should be used to determine whether the debtor taxpayer had filed a return. The <u>Beard</u> test as articulated in Ninth Circuit authority requires courts to consider the following factors:

> (1) it must purport to be a return; (2) it must be executed under penalty of perjury; (3) it must contain sufficient data to allow calculation of tax; and (4) it must represent an honest and reasonable attempt to

[3](...continued) additional amount assessed for 2005 based on the Martins' 2005 tax return. Nor did it contest the dischargeability of the penalties it assessed and the interest accrued on the penalties.

satisfy the requirements of the tax law. United States v. Hatton (In re Hatton), 220 F.3d 1057, 1060–61 (9th Cir. 2000) ("Hatton II") (citing United States v. Hindenlang (In re Hindenlang), 164 F.3d 1029, 1033 (6th Cir. 1999)).

Instead of utilizing the version of the Beard test as applied in Hatton II and In re Hindenlang, the bankruptcy court utilized a slightly different version of the Beard test. Whereas the honest-and reasonable inquiry in the Hatton/Hindenlang version is broad in scope and at least partially subjective in focus, the honest-and-reasonable inquiry in the version of the Beard test utilized by the bankruptcy court was narrow in scope and exclusively objective in focus. The bankruptcy court only considered the face of the Martins' tax filings and looked at the form and content of those filings in order to determine, from an objective standpoint, that the Martins' filings for the 2004, 2005 and 2006 tax years constituted "an honest and reasonable attempt to satisfy the requirements of the tax law."

The bankruptcy court concluded that the Martins' 2004, 2005 and 2006 tax filings qualified as returns for nondischargeability purposes and granted judgment in their favor on that basis. The IRS timely filed its notice of appeal on April 14, 2014.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I), and we have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Did the bankruptcy court apply the correct legal standard for determining whether the Martins' tax filings qualified as tax

8

returns for purposes of the nondischargeability statute?

This appeal presents a question of statutory construction, which is a question of law we review de novo. Samson v. W. Capital Partners, LLC (In re Blixseth), 684 F.3d 865, 869 (9th Cir. 2012) (per curiam).

**DISCUSSION**

**A.   The Parties' Positions**

In this appeal, the IRS has advocated two distinct positions: an official, preferred position and an unofficial, fall-back position.  Officially, the IRS contends that the dischargeability of income tax debt associated with a late-filed tax return should hinge on whether the taxpayer filed the return before or after the IRS made any assessment.  This position is not new for the IRS.  See, e.g., Mallo v. I.R.S. (In re Mallo), 774 F.3d 1313, 1325-27 (10th Cir. 2014); Wogoman v. I.R.S. (In re Wogoman), 475 B.R. 239, 250 (10th Cir. BAP 2012); see also IRS Chief Counsel Notice CC-2010-016, available at 2010 WL 3617597.

Alternately and unofficially, the IRS contends that the Ninth Circuit's version of the Beard test is sufficient to accomplish its litigation goal in this appeal.  According to the IRS, if the bankruptcy court here had applied the Ninth Circuit version of the Beard test, it should have and would have concluded that the Martins' 2004, 2005 and 2006 tax returns do not qualify as returns for nondischargeability purposes.

The Martins similarly contend that the Beard test applies, but they insist that the bankruptcy court correctly determined

9

under the Beard test that their 2004, 2005 and 2006 tax returns qualify as returns for nondischargeability purposes.

Notably, neither side here advocates in favor of the literal construction of the "return" definition that Congress added to the nondischargeability statute as part of the 2005 Bankruptcy Code amendments. Indeed, in this case and in other cases, the IRS expressly has rejected the literal construction and has stated that the literal construction leads to "overly harsh" results. In re Wogoman, 475 B.R. at 250. Instead, the IRS has advocated for its less draconian approach focusing on whether the taxpayer filing occurred before or after an IRS tax assessment. Id.

Even though neither side here supports the literal construction of the "return" definition, in light of the increasing number of courts that have adopted that construction, our analysis necessarily focuses on that approach first. Before undertaking that analysis, however, we first describe the legal state of affairs in the Ninth Circuit before Congress added the "return" definition to the nondischargeability statute.

**B.    The Ninth Circuit Legal Landscape Before BAPCPA[4]**

Section 523(a)(1)(B)(i) excepts from discharge tax debt when the debtor taxpayer was required to file a tax return but did not do so. Cal. Franchise Tax Bd. v. Jackson (In re Jackson), 184 F.3d 1046, 1050 (9th Cir. 1999). "The policy behind this subsection is that a debtor should not be permitted to discharge

---

[4]The Bankruptcy Abuse Prevention and Consumer Protection Act, Pub.L. No. 109-8, 119 Stat. 23 (2005) ("BAPCPA").

10

a tax liability based upon **a required tax return that was never filed.**"  Id. at 1052 (citing 3 NORTON BANKRUPTCY LAW AND PRACTICE 2d § 47:6, 47-15 (1997)).  Meanwhile, § 523(a)(1)(B)(ii) excepts from discharge tax debt associated with untimely filed tax returns filed within two years of the debtor's bankruptcy filing, and § 523(a)(1)(C) excepts from discharge tax debt associated with tax returns that are fraudulent or evasive.  See In re Hindenlang, 164 F.3d at 1032; see also 4 COLLIER ON BANKRUPTCY ¶ 523.07[3],[4] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. rev. 2015).

In United States v. Hatton (In re Hatton) ("Hatton I"), 216 B.R. 278, 282 (9th Cir. BAP 1997), this Panel adopted for purposes of § 523(a)(1)(B)(i) the meaning of "return" set forth in Beard.  Beard held that a document qualifies as a return if:

> (1) it must purport to be a return; (2) it must be executed under penalty of perjury; (3) it must contain sufficient data to allow calculation of tax; and (4) it must represent an honest and reasonable attempt to satisfy the requirements of the tax law.

In re Hindenlang, 164 F.3d at 1033.  Hatton I applied the Beard test in upholding the bankruptcy court's finding that the debtor had filed a return within the meaning of § 523(a)(1)(B)(i).  Hatton I reasoned that the debtor taxpayer came close enough to filing a return by meeting with the IRS, by acquiescing to the substitute return the IRS filed on the debtor taxpayer's behalf, by acknowledging his liability for 1983 taxes in the amount set forth in the substitute return, and by entering into an installment payment agreement, pursuant to which debtor agreed to pay his delinquent taxes at a rate of $200 per month.

The Ninth Circuit Court of Appeals reversed.  Hatton II,

11

220 F.3d at 1060-61. Hatton II rejected Hatton I's attempted expansion of the Beard test to include a debtor taxpayer who had not signed any document under penalty of perjury and who "made every attempt to avoid paying his taxes" until the IRS sent the debtor taxpayer a letter threatening to levy on his wages and bank accounts and to seize his property. Id. at 1061. But Hatton II did not throw out the baby with the bath water. For purposes of § 523(a)(1)(B)(i), Hatton II explicitly adopted Beard's definition of return, as articulated in In re Hindenlang.[5]

By adopting In re Hindenlang's version of the Beard test, Hatton II sub silentio overruled, at least in part, another Panel decision – United States v. Nunez (In re Nunez), 232 B.R. 778, 783 (9th Cir. BAP 1999). In re Nunez adopted a slightly

---

[5]There is nothing in Hatton II suggesting that it adopted other aspects of In re Hindenlang, particularly In re Hindenlang's holding that post-assessment tax returns filed by the taxpayer never qualify as returns for purposes of § 523(a)(1)(B). To the contrary, Hatton II's analysis – especially its reliance on the Beard test to determine whether the taxpayer filed a return – is inconsistent with In re Hindenlang's pre- or post-assessment test. As stated in one persuasive bankruptcy court decision:

> Had the Hatton court adopted the Hindenlang [pre- or post-assessment] Rule, it would not have needed to consider whether the Debtor had executed the submissions under penalty of perjury or the Debtor's subjective intent post assessment. The court would have simply determined that the debtor's post assessment submissions, could not as a matter of law, constitute returns under § 523(a)(1)(B).

Rushing v. United States (In re Rushing), 273 B.R. 223, 227 (Bankr. D. Ariz. 2001).

12

different version of the Beard test. Following Savage v. I.R.S. (In re Savage), 218 B.R. 126, 132 (10th Cir. BAP 1998), In re Nunez narrowed the honesty-and-reasonableness prong of the Beard test to examine only what appeared on the face of the taxpayer's filing in order to ascertain whether that filing constituted "an honest and genuine endeavor to satisfy the law." In re Nunez, 232 B.R. at 783 (quoting In re Savage, 218 B.R. at 132). In re Nunez, therefore, excluded from its honesty-and-reasonableness analysis the length of the delay in the taxpayer's filing, the reason for the delay and the number of tax years for which timely filings were missed. Id. It is impossible to reconcile this aspect of In re Nunez with Hatton II's honesty-and-reasonableness analysis, which largely hinged on the delay in taxpayer compliance. See Hatton II, 220 F.3d at 1061.

In short, in the Ninth Circuit, the Hatton II/ In re Hindenlang version of the Beard test indisputably governed the definition of the term "return" for purposes of determining the nondischargeability of tax debts, at least until the enactment of BAPCPA. In the next section, we attempt to discern how (if at all) BAPCPA changed the legal landscape.

**C.    The Impact of BAPCPA on the Nondischargeability of Tax Debts**

Recall that, when Congress first enacted the Bankruptcy Code in 1978, it specifically noted that § 523(a)(1)(B) represented a careful balancing of the competing interests of the debtor, the taxing authority, and the debtor's other creditors. See Maryland v. Ciotti (In re Ciotti), 638 F.3d 276, 279 (4th Cir. 2011) (citing S.Rep. No. 95-989, at 14 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5800)). Congress further stated that

13

§ 523(a)(1)(B) reflected its intent that "**tax claims which are nondischargeable**, despite a lack of priority, **are those to whose staleness the debtor contributed by some wrong-doing or serious fault**." S.Rep. No. 95-989, at 14 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5800 (emphasis added).

In contrast, when Congress enacted BAPCPA, it did not offer any similarly specific statement of its legislative rationale for adding a definition of "return" into the Code's nondischargeability statute. In re Mallo, 774 F.3d at 1327.[6] But BAPCPA was accompanied by a general statement of legislative intent indicating that the 2005 amendments as a whole were motivated by four general factors:

> the "recent escalation of consumer bankruptcy filings," the "significant losses . . . associated with bankruptcy filings," the fact that the "bankruptcy system has loopholes and incentives that allow

---

[6]Congress did explain the second sentence of the hanging paragraph, as follows:

> Income Tax Returns Prepared by Tax Authorities. Section 714 of the Act amends section 523(a) of the Bankruptcy Code to provide that a return prepared pursuant to section 6020(a) of the Internal Revenue Code, or similar State or local law, constitutes filing a return (and the debt can be discharged), but that a return filed on behalf of a taxpayer pursuant to section 6020(b) of the Internal Revenue Code, or similar State or local law, does not constitute filing a return (and the debt cannot be discharged).

H.R. REP. 109-31(I), at 103 (2005), reprinted in 2005 U.S.C.C.A.N. 88, 167. It seems odd that Congress would bother to explain the relatively minuscule effect of the second sentence of the hanging paragraph but not offer any legislative comment on the first sentence, which literal construction adherents claim dramatically altered the nondischargeability of tax debt associated with untimely filed tax returns.

14

and—sometimes—even encourage opportunistic personal filings and abuse," and "the fact that some bankruptcy debtors are able to repay a significant portion of their debts."

In re Ciotti, 638 F.3d at 279 (citing H.R.Rep. No. 109-31, at 3-5 (2005), reprinted in 2005 U.S.C.C.A.N. 88, at 90-92).

In any event, BAPCPA added the "return" definition into the nondischargeability statute in a hanging paragraph tacked onto the end of § 523(a) and often cited as § 523(a)(*). The hanging paragraph consists of two sentences, the first of which defines the term "return" and the second of which further refines that definition by explicitly including a certain type of return prepared by the taxing authority on behalf of the taxpayer and by expressly excluding another. The full text of the hanging paragraph provides as follows:

> For purposes of this subsection, the term "return" means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.

11 U.S.C. § 523(a)(*).

A number of courts, including several Courts of Appeal, have addressed the issue of what the "return" definition means, and many of them have held that the term "applicable filing requirements" is unambiguous and that the plain and ordinary meaning of the term necessarily includes time deadlines for filing returns as stated in the Internal Revenue Code, 26 U.S.C. § 6072(a), and/or in equivalent state statutes. Therefore, these

15

literal construction courts have concluded that untimely returns are not returns at all for purposes of the nondischargeability statute.  See, e.g., Fahey v. Massachusetts Dep't of Revenue (In re Fahey), 779 F.3d 1, 4-5 (1st Cir. 2015); In re Mallo, 774 F.3d at 1321; McCoy v. Miss. State Tax Comm'n (In re McCoy), 666 F.3d 924, 928, 932 (5th Cir. 2012).

The literal construction adherents have not been deterred by the perceived harshness resulting from their reading of the statute.  They rely heavily (if not exclusively) on the plain language of the phrase "applicable filing requirements" to conclude that Congress intended by way of the "return" definition in the hanging paragraph to except from discharge the tax debts of all taxpayers whose tax returns do not strictly comply with all filing requirements – including time deadlines.  See, e.g., In re Fahey, 779 F.3d at 4-5; In re Mallo, 774 F.3d at 1321; In re McCoy, 666 F.3d at 932.  In doing so, they gloss over one of the most important rules of plain meaning statutory construction: that the meaning of a statutory term only is considered plain and unambiguous if the term is clearly understood in the context of the words surrounding it and in the context of the larger statutory scheme.

The Supreme court reiterated the vital importance of contextual reading in Yates v. United States, 135 S. Ct. 1074, 1081-82 (2015).  Yates emphasized that the clarity of statutory language only can be measured in "the specific context in which that language is used, and the broader context of the statute as a whole."  Id. at 1081 (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997)).  While the Court's ruling in Yates was

16

a plurality decision, there was no controversy amongst the Justices about the critical importance of contextual reading. In fact, the Yates dissent, in which four Justices joined, was even more compelling on this point:

> I agree with the plurality (really, who does not?) that context matters in interpreting statutes. We do not "construe the meaning of statutory terms in a vacuum." Rather, we interpret particular words "in their context and with a view to their place in the overall statutory scheme." And sometimes that means, as the plurality says, that the dictionary definition of a disputed term cannot control.

Id. at 1092 (Justice Kagan dissenting) (citations omitted).

The more one considers the phrase "applicable filing requirements" in context, the more doubtful the literal construction becomes. First, within the hanging paragraph itself, the second sentence does not square with the so-called ordinary meaning of the term "applicable filing requirements" found in the first sentence. The literal construction of "applicable filing requirements" effectively excepts from discharge all taxes associated with untimely-filed returns, but the second sentence adds right back into the definition returns prepared by taxing authorities under 26 U.S.C. § 6020(a) or under equivalent state statutes. That subsection provides:

> **(a) Preparation of return by Secretary**.--If any person shall fail to make a return required by this title or by regulations prescribed thereunder, but shall consent to disclose all information necessary for the preparation thereof, then, and in that case, the Secretary may prepare such return, which, being signed by such person, may be received by the Secretary as the return of such person.

26 U.S.C. § 6020(a). Thus, under the literal construction of the hanging paragraph, a debtor taxpayer who is one month or one day

17

or even one hour late in filing his or her return will have his associated tax debt excepted from discharge, whereas a debtor taxpayer who never bothers to file his or her own return can discharge his or her associated tax debt if the IRS fortuitously prepares a return on that person's behalf.

Why would Congress want to treat debtor taxpayers who do nothing on their own to comply with their return filing obligations so much better than debtor taxpayers who – perhaps for reasons beyond their control – miss the filing deadline by as little as a day but then conscientiously complete and file their return?  The literal construction adherents have an answer to this question, but that answer is hardly persuasive.  The literal construction adherents speculate that Congress wanted to make available to the taxing authorities a "carrot" they could offer to formerly uncooperative taxpayers to encourage their cooperation going forward.  In re Fahey, 779 F.3d at 7; In re Mallo, 774 F.3d at 1324; In re McCoy, 666 F.3d at 931.

This makes no sense.  The literal construction adherents admit (at least some of them do) that it is extremely rare for taxing authorities to engage in the expensive and time-consuming process of preparing tax returns on behalf of taxpayers.  See, e.g., In re Fahey, 779 F.3d at 6-7.  More importantly, the literal construction of the "return" definition in reality creates an incentive for impoverished taxpayers who already are late in filing one or more tax returns to further delay, with the hope that they would be some of the lucky few for whom the taxing authorities decide to prepare returns on the taxpayers' behalf (which then would enable them under the literal construction to

18

obtain a discharge of an otherwise nondischargeable tax debt).

When read with a literal construction, the disconnect between the first and second sentences of the hanging paragraph does not end there. In the last part of the second sentence, the hanging paragraph excludes from the definition of "return" returns prepared by taxing authorities under 26 U.S.C. § 6020(b) or under equivalent state statutes. That subsection provides in relevant part:

> **(b) Execution of return by Secretary.**--
>
> > **(1) Authority of Secretary to execute return.**--If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.

26 U.S.C. § 6020(b). Thus, according to the literal construction adherents, even though the first sentence of the hanging paragraph already excludes **all** late-filed returns from the definition of "return," Congress felt it necessary (supposedly for the sake of clarity) to repeat one tiny aspect of this exclusion one sentence later – the exclusion with respect to § 6020(b) returns, which by definition are untimely. See, e.g., In re Fahey, 779 F.3d at 7; In re Mallo, 774 F.3d at 1324. Many literal construction adherents acknowledge that a statute should, if possible, be construed in a manner that avoids rendering any part of it redundant. See, e.g., In re Fahey, 779 F.3d at 6; In re Mallo, 774 F.3d at 1317. Indeed, In re Fahey cites to TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001), which stated: "[i]t is a **cardinal principle** of statutory construction that a statute

19

ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." Id. (citations and internal quotation marks omitted and emphasis added).

The literal construction adherents offer little to explain their acceptance of the redundancy created by their interpretation of the hanging paragraph. According to them, Congress likely was redundant for the sake of clarity. But this explanation is wholly at odds with the cardinal principle of statutory construction referenced immediately above. Alternately, the literal construction adherents dismiss the redundancy as insignificant, especially in light of the plain meaning of the term "applicable filing requirements." See, e.g., In re Fahey, 779 F.3d at 7. This reasoning not only is circular but also undermines a contextual reading of the statute.

Assuming the literal construction of the term "applicable filing requirements" already has not collapsed under the weight of the contextual difficulties found within the hanging paragraph itself, another more-extreme level of difficulties awaits within § 523(a)(1)(B)(ii). In that subparagraph, as originally enacted in 1978, Congress clearly excepted from discharge any and all tax debts associated with untimely filed returns that were filed within two years of the debtor's bankruptcy petition filing. In re Ciotti, 638 F.3d at 279. Before BAPCPA, there was no genuine dispute regarding the broad coverage of this subparagraph. See id. After BAPCPA, at least under the literal construction, the once-expansive coverage of this subparagraph has been dramatically reduced to an infinitesimal scope – a scope

20

bordering on and approaching zero. As the literal construction adherents would have it, this subparagraph post-BAPCPA only would apply to § 6020(a) returns, since § 6020(a) returns are the only type of untimely returns that fall within the definition of "return" under the literal construction. See, e.g., In re Fahey, 779 F.3d at 6; In re Mallo, 774 F.3d at 1323-24.

Structurally, interpreting the definitional hanging paragraph in a way that dramatically alters the coverage of § 523(a)(1)(B)(ii) is an excellent example of "the tail wagging the dog." This structural concern is the least of our concerns. The literal construction also renders § 523(a)(1)(B)(ii) all but meaningless. The literal construction adherents explain away this concern by suggesting that, while "meaningless" is not okay under the cardinal rule disfavoring interpretations that render part of a statute superfluous, "all but meaningless" is fine. See, e.g., In re Fahey, 779 F.3d at 6; In re Mallo, 774 F.3d at 1323-24.

And yet we have an even more significant concern. The Supreme Court disfavors interpretations of ambiguous Bankruptcy Code provisions (and amendments) that impose major changes in pre-existing practice in the absence of at least some discussion in the legislative history. See Dewsnup v. Timm, 502 U.S. 410, 419 (1992). The literal construction adherents reason that this concern is unjustified because the "return" definition is unambiguous. But our contextual reading of the statutory text convinces us otherwise.

At the outermost circle of contextual reading, we must consider how the literal construction of the term "applicable

21

filing requirements" fits within Congress' statutory scheme for excepting debts from discharge. Recall that Congress' original Bankruptcy Code enactment of § 523(a)(1)(B) embodied a careful balancing of the competing interests of the debtor, taxing authorities and the debtor's other creditors. See In re Ciotti, 638 F.3d at 279 (citing S.Rep. No. 95-989, at 14 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5800)). Nothing in the term "applicable filing requirements" or in the four general factors that served as the impetus for BAPCPA manifests an intent to effect a sea-change in how Congress chose to balance the dischargeability of tax debts associated with untimely filed returns.

The Supreme Court before BAPCPA recognized that "exceptions to discharge should be confined to those plainly expressed," Kawaauhau v. Geiger, 523 U.S. 57, 62 (1998) (quoting Gleason v. Thaw, 236 U.S. 558, 562 (1915)), and the Supreme Court after BAPCPA continues to adhere to this same principle. Bullock v. BankChampaign, N.A., 133 S. Ct. 1754, 1760 (2013). Here, in light of our contextual reading of the term "applicable filing requirements," we are not persuaded that the statutory text, as amended by BAPCPA, manifests a plainly expressed intent to re-balance the nondischargeability of tax debts associated with untimely filed tax returns.

**D.  Application of the Correct Definition of "Return" to this Appeal**

Our rejection of the literal construction of the "return" definition leaves us with the task of articulating what the definition of "return" in the hanging paragraph is supposed to

22

mean. The generic terms "applicable bankruptcy law" and "applicable filing requirements" necessarily reflect that the answer will depend on which nonbankruptcy laws are applicable (federal or state or local) and what the applicable filing requirements say. "[N]early all courts" pre-BAPCPA utilized some version of the Beard test. In re Mallo, 774 F.3d at 1318. In other words, for purposes of determining the dischargeability of federal income tax debt, the "return" definition added by Congress in 2005 effectively codified the Beard test, except that Congress in the second sentence of the hanging paragraph carved out some specific rules for tax returns prepared by taxing authorities.[7]

In this appeal, in the context of late-filed federal income tax returns prepared and filed by the taxpayers, there is no convincing or persuasive indication that BAPCPA or the hanging paragraph abrogated Hatton II's holding that we should use In re Hindenlang's version of the Beard test – a test derived from nonbankruptcy law – to determine whether the Martins' untimely tax returns qualify as tax returns for nondischargeability purposes. That version of the Beard test provides:

> (1) it must purport to be a return; (2) it must be executed under penalty of perjury; (3) it must contain sufficient data to allow calculation of tax; and (4) it must represent an honest and reasonable attempt to satisfy the requirements of the tax law.

---

[7]We express no opinion on what "return" means under applicable nonbankruptcy law when state tax returns are in play, as that issue is not properly before us.

23

In re Hindenlang, 164 F.3d at 1033.[8]

Similar to what this Panel held in In re Nunez, the bankruptcy court here concluded that it should utilize a different version of the Beard test. In this alternate version, the prong of the test focusing on the honesty and reasonableness of the debtor's efforts to file the return is narrow in scope and considers only the form and substance of the purported return while ignoring the length of delay, the reason for the delay, and the number of tax years missed. As we stated at the outset of this discussion, this alternate version of the Beard test is inconsistent with the holding and reasoning set forth in Hatton II, so we cannot uphold the bankruptcy court's usage of this alternate test.

Hatton II offered two distinct reasons why the taxpayer there did not satisfy the Beard test. Hatton II, 220 F.3d at 1061. First, Hatton II explained the the taxpayer had not signed any document under penalty of perjury, so the second Beard test factor was not met. Id. In addition, Hatton II explained that

_____

[8]The IRS follows the Beard test in defining the term "return" under many circumstances. As the bankruptcy court noted in its Memorandum Decision:

> The IRS has referenced the Beard Test in its revenue rulings and other materials. See Rev. Rul. 2005-59, 2005-2 C.B. 505 (2005) (clarifying when documents constitute valid returns under Beard Test in context of joint filers); I.R.S. Chief Couns. Notice CC-2004-032, 2004 WL 3210764 (Sept. 9, 2004) ("The four part test set forth in [Beard] is widely accepted as the analysis for determining what constitutes a return for purposes of the Internal Revenue Code.").

Mem. Dec. (March 31, 2014) at 20:23-26.

24

the taxpayer indisputably took no steps to cure his delinquency in filing his 1983 federal income tax return, and did not begin to cooperate with the IRS's efforts, until the IRS threatened to levy on his wages and his bank account. Id. According to Hatton II, these undisputed facts established that the taxpayer had not engaged in "an honest and reasonable attempt to comply with the requirements of the tax law" as required by the fourth Beard test factor. Id. The bankruptcy court posited that, because Hatton II offered two separate and independent reasons why the Beard test was not met, the second reason given – regarding the honesty and reasonableness of the taxpayer's efforts – perhaps was non-binding dicta. We disagree. When alternate grounds are given for a holding, neither ground constitutes non-binding dicta. Exp. Grp. v. Reef Indus., Inc., 54 F.3d 1466, 1471 (9th Cir. 1995).

The bankruptcy court attempted to offer some other reasons why it might not be bound by Hatton II, but none of these other reasons, even if valid, justify a departure from Hatton II's version of the Beard test, which included a broader honesty-and-reasonableness prong than the bankruptcy court utilized. Because the bankruptcy court did not apply the correct legal standard for assessing the honesty and reasonableness of the Martins' efforts to comply with applicable tax laws, we must VACATE AND REMAND so that the bankruptcy court can apply the proper legal standard to the relevant facts of this case, which are not limited to the form and content of the Martins' filings, but also include the number of missing returns, the length of the delay, the reasons for the delay, and any other circumstances reasonably pertaining

25

to the honesty and reasonableness of the Martins' efforts.

In sum, we need to ensure that the bankruptcy court views all of the relevant facts through the lens of the appropriate legal standard set forth in Hatton II, and we furthermore believe that the determination of whether all of the relevant facts and circumstances constitute an honest and reasonable effort to comply with the applicable tax laws is best made, in the first instance, by the bankruptcy court.

**E.  IRS Argument That Tax Debts Associated With Post-Assessment Tax Returns Are Always Nondischargeable**

There is only one other issue that we need to address.  We must address the IRS's argument that a tax debt associated with an IRS tax assessment made without the benefit of a taxpayer-prepared tax return always should be treated as nondischargeable.

The IRS's argument is twofold.  First, the IRS contends that, when as here the taxpayer does not file his or her tax return until after the IRS has assessed taxes pursuant to Internal Revenue Code deficiency procedures, the debt arising from the assessment is (and always will be) a debt for which no return has been filed, thereby bringing the debt within the scope of § 523(a)(1)(B)(i) – a tax debt for which a tax return was required but never filed.  According to the IRS, it makes no difference whether the taxpayer, after assessment, belatedly files his or her tax return because the nature of the debt (as a debt arising from the assessment rather than the return) cannot and does not change under applicable tax law even when a return is later filed.  Aplt. Opn. Br. at pp. 7-15.

Our initial reaction to this argument is that it tends to

26

prove too much. If we were to accept the IRS's interpretation of the nature of an assessment-based tax debt, it proves not only that the tax liability arose without a tax return, but also that a tax return was neither necessary nor "required" to impose the assessment-based tax debt. In any event, even if the belated tax return associated with an assessment-based tax debt was still required in some sense, we agree with the reason offered by the bankruptcy court for rejecting this argument. As the bankruptcy court explained, the tax debt within the meaning of the Bankruptcy Code preexists both the filing of the return and the issuance of the IRS assessment. Mem. Dec. (March 31, 2014) at p. 12 (citing Rhodes v. United States (In re Rhodes), 498 B.R. 357, 362 (Bankr. N.D. Ga. 2013); see also In re Mallo, 774 F.3d at 1326 (following In re Rhodes). Under the Internal Revenue Code, the tax debt – or right to payment – arises at the end of each tax year and not later on. In re Rhodes, 498 B.R. at 362. An assessment is merely a method for fixing the amount of that debt and not the source of the debt itself. Id.

Second, the IRS argues that a post-assessment tax return is the functional equivalent of no tax return at all. As the IRS puts it, once it is forced to assess taxes without the benefit of a taxpayer-prepared return, a later-filed tax return fails to serve its primary function as a vehicle for self-reporting tax liability. We already rejected this identical argument in In re Nunez, 232 B.R. 778, 781-82 (9th Cir. BAP 1999). While some parts of In re Nunez were sub-silentio overruled by Hatton II, Hatton II did not overrule this part of In re Nunez. Nor did Hatton II overrule the following reasoning from

27

In re Nunez supporting its rejection of the IRS's post-assessment tax return argument:

> Congress could have conditioned discharge of tax debt on whether a return was filed prior to an assessment. As correctly noted by the [bankruptcy] court, Congress used assessment as a trigger for other time periods in the Code, for example, the priority qualifications found in Section 507(a)(8)(A)(ii). When Congress includes particular language in one section of the Code, but omits it in another, it is presumed to have acted intentionally and purposely. We will not read into Section 523(a)(1)(B) the requirement that a debtor must have filed a return prior to an assessment by the IRS.

In re Nunez, 232 B.R. at 782 (internal citation omitted).

Indeed, Hatton II is consistent with Nunez's rejection of the IRS's post-assessment tax return argument in the following sense: if Hatton II had agreed with the IRS that a post-assessment tax return is no tax return at all, Hatton II would not have had any need to apply the Beard test (as it did) to resolve the question of whether the debtor there had filed a return within the meaning the nondischargeability statute. Simply put, Hatton II's holding and reasoning cannot be reconciled with the IRS's post-assessment tax return argument.

Accordingly, we reject both aspects of the IRS's post-assessment tax return argument.

## CONCLUSION

For the reasons set forth above, we VACATE the bankruptcy court's judgment holding that the Martins' tax debt was dischargeable, and we REMAND for further proceedings consistent with this decision.

28