FILED

OCT 5 2020

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>RUDOLF P. SIENEGA,<br><br>　　　　　Debtor. | BAP No. EC-19-1334-FLS<br><br>Bk. No. 14-30986-B-7 |
| RUDOLF P. SIENEGA,<br>　　　　　Appellant,<br>v.<br>STATE OF CALIFORNIA FRANCHISE<br>TAX BOARD,<br>　　　　　Appellee. | Adv. No. 18-02191<br><br>**OPINION** |

Appeal from the United States Bankruptcy Court
for the Eastern District of California
Christopher D. Jaime, Bankruptcy Judge, Presiding

APPEARANCES:
Robert L. Goldstein argued for appellant; Donny P. Le argued for appellee.

Before: FARIS, LAFFERTY, and SPRAKER, Bankruptcy Judges.

FARIS, Bankruptcy Judge:

## INTRODUCTION

Chapter 7[1] debtor Rudolf P. Sienega failed to file state tax returns for

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

four years in the 1990s. After receiving notices of federal tax adjustments from the Internal Revenue Service ("IRS") and an adverse U.S. Tax Court ruling, he notified the California Franchise Tax Board ("FTB") of the increased federal assessments. The FTB assessed state taxes accordingly. Mr. Sienega did not contest the state assessment or pay the taxes owed. Nor did he ever file formal state tax returns for the relevant years.

When he filed for bankruptcy protection, the FTB sought to have the tax debts declared nondischargeable under § 523(a)(1)(B) because he had not filed his state tax returns. The bankruptcy court agreed and held that the state tax debts were not dischargeable.

On appeal, Mr. Sienega concedes that he did not file formal tax returns as state law required, but he contends that the act of notifying the FTB of the federal tax adjustments was sufficient to constitute a "return" under § 523(a)(1)(B). We disagree with Mr. Sienega, we agree with the bankruptcy court, and we AFFIRM. We publish this decision because the interplay between § 523(a)(1)(B), California Revenue and Taxation Code ("RTC") section 18622(a), and other applicable California statutes presents questions of first impression at the appellate level in this circuit.

## FACTUAL BACKGROUND[2]

### A.     Mr. Sienega's tax debts

Mr. Sienega failed to file California state tax returns for the 1990, 1991, 1992, and 1996 tax years.

In or around 2007, the IRS made adjustments to Mr. Sienega's federal tax liability for the relevant tax years. In January 2009, the U.S. Tax Court ruled in *Sienega v. Commissioner of Internal Revenue*, case no. 22920-07 ("Tax Court Ruling") that Mr. Sienega was liable for accuracy-related penalties totaling approximately $9,688.

In July 2009, Mr. Sienega's counsel notified the FTB of the adjustments via fax transmissions (the "Faxes"). The cover sheet read:

> Pursuant to California State law, Mr. and Mrs. Sienega hereby notify the Franchise Tax Board that the Internal Revenue Service has made recent adjustments to their 1990 federal tax return, which they concede. Following please find a copy of the IRS' adjustments, including a computation of how the changes were made.

Counsel submitted a substantially similar cover sheet for each of the relevant tax years. The attached IRS forms (Form 4549-A) listed the adjustments to the Sienegas' income, the corrected taxable income and tax liability, interest and penalties, and the total balance due. Mr. Sienega did

---

[2] We exercise our discretion to review the bankruptcy court's docket, as appropriate. *See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

not sign the Faxes or expressly state that they were submitted under penalty of perjury. He apparently did not provide a copy of the written Tax Court Ruling to the FTB until 2017.

In August 2009, the FTB sent Mr. Sienega notices of proposed assessment. The notices informed him that the FTB had not received his state income tax returns for the relevant years. The notices proposed to assess state taxes "based upon the federal audit report submitted by the taxpayer or representative." The FTB calculated Mr. Sienega's state tax liability (including penalties and interest) and informed him that, if he disagreed with the proposed adjustment, he had to submit a protest to the FTB or the assessment would become final.

Mr. Sienega did not file his state tax returns for the relevant years or protest any of the proposed assessments. Accordingly, the tax assessments became final in October 2009.

## B. The bankruptcy case and adversary proceeding

In November 2014, Mr. Sienega filed a bankruptcy petition. He received a chapter 7 discharge in October 2016.

In November 2018, the FTB filed an adversary complaint to have Mr. Sienega's state tax debts declared nondischargeable under § 523(a)(1)(B) due to his failure to file state income tax returns. Mr. Sienega asserted that he was entitled to discharge of the tax debts because he "satisfied a state law similar to Internal Revenue Code § 6020(a), and/or has

4

a court order upon which the taxes were based, and/or an equivalent report or notice of a return was filed."

FTB filed a motion for summary judgment (the "FTB Motion") supported by a statement of facts. Mr. Sienega filed an opposition to the FTB Motion, but he did not respond to the FTB's statement of facts. He also filed his own motion for summary judgment (the "Sienega Motion") supported by a statement of facts.

The bankruptcy court decided the two motions without a hearing. It held that Mr. Sienega had failed to challenge the FTB's statement of facts, so those facts were admitted, and there was no factual dispute. It adopted by reference the FTB's reasoning. It granted the FTB Motion and denied the Sienega Motion as moot.[3]

Mr. Sienega timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in granting the FTB Motion (and denying the Sienega Motion) to except the state tax debts from discharge under § 523(a)(1)(B) because Mr. Sienega failed to file his state income tax returns.

---

[3] The bankruptcy court later amended its memorandum decision, order, and judgment to remove mention of "penalties" within the scope of the judgment.

## STANDARD OF REVIEW

We review de novo the bankruptcy court's decision to grant or deny summary judgment. *Boyajian v. New Falls Corp. (In re Boyajian)*, 564 F.3d 1088, 1090 (9th Cir. 2009). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014) (citations omitted).

We employ the same summary judgment standards as the bankruptcy court. Summary judgment should be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Wank v. Gordon (In re Wank)*, 505 B.R. 878, 886 (9th Cir. BAP 2014) (citing Civil Rule 56(a), made applicable in adversary proceedings by Rule 7056). Pure questions of law are appropriate for summary judgment. *See Schrader v. Idaho Dep't of Health & Welfare*, 768 F.2d 1107, 1110 (9th Cir. 1985).

## DISCUSSION

### A. Section 523(a)(1)(B) excepts tax debts from discharge if the debtor failed to a file a return or an equivalent report or notice.

#### 1. The Bankruptcy Code

We begin with the text of the statutes. "The preeminent canon of statutory interpretation requires us to presume that [the] legislature says in a statute what it means and means in a statute what it says there. Thus, our inquiry begins with the statutory text, and ends there as well if the text is

unambiguous." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (citation omitted).

Section 523(a)(1)(B) provides that a chapter 7 discharge excludes a debt:

> (1) for a tax or a customs duty –
>
> > . . . .
> >
> > (B) with respect to which a return, or equivalent report or notice, if required –
> >
> > > (i) was not filed or given; or
> > >
> > > (ii) was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition[.]

§ 523(a)(1)(B). Section 523(a) also provides, in the "hanging paragraph" at the end of the subsection:

> For purposes of this subsection, the term "return" means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.

§ 523(a). Internal Revenue Code ("IRC") section 6020(a)[4] authorizes the IRS to prepare a return for a taxpayer's signature if the taxpayer consents and provides the necessary information. In contrast, IRC section 6020(b)[5] permits the IRS to prepare a return for an uncooperative taxpayer.

## 2. Definition of "return"

Prior to the 2005 amendments under the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), § 523(a)(1)(B) rendered tax debts nondischargeable if the debtor failed to file "returns." In *California Franchise Tax Board v. Jackson (In re Jackson)*, 184 F.3d 1046 (9th Cir. 1999), the Ninth Circuit noted that "[t]he policy behind this subsection is that a debtor should not be permitted to discharge a tax liability based upon a required tax return that was never filed." *Id.* at 1052 (quoting 3 Norton Bankruptcy Law and Practice 2d § 47:6, 47-15 (1997)).

Before BAPCPA, § 523(a)(1)(B) did not define "return." The Ninth Circuit and other courts crafted their own definitions. In *United States v.*

---

[4] IRC section 6020(a) provides:

If any person shall fail to make a return required by this title or by regulations prescribed thereunder, but shall consent to disclose all information necessary for the preparation thereof, then, and in that case, the Secretary may prepare such return, which, being signed by such person, may be received by the Secretary as the return of such person.

[5] IRC section 6020(b) provides that, "[i]f any person fails to make any return required by any internal revenue law. . . or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise."

8

*Hatton (In re Hatton)*, 220 F.3d 1057, 1060 (9th Cir. 2000), the Ninth Circuit adopted the four-part test developed in *Beard v. Commissioner of Internal Revenue*, 82 T.C. 766, 1984 WL 15573 (1984), *aff'd*, 793 F.2d 139 (6th Cir. 1986). Under that test, "[i]n order for a document to qualify as a return: '(1) it must purport to be a return; (2) it must be executed under penalty of perjury; (3) it must contain sufficient data to allow calculation of tax; and (4) it must represent an honest and reasonable attempt to satisfy the requirements of the tax law.'" *In re Hatton*, 220 F.3d at 1060-61 (quoting *United States v. Hindenlang (In re Hindenlang)*, 164 F.3d 1029, 1033 (6th Cir. 1999)). The Ninth Circuit noted that the "*Beard* definition is consistent with the purpose of a return, which is not only to get tax information in some form, but 'to get it with such uniformity, completeness, and arrangement that the physical task of handling and verifying returns may be readily accomplished.'" *Id.* at 1061 (quoting *Comm'r of Internal Revenue v. Lane-Wells Co.*, 321 U.S. 219, 223 (1944)).

With the 2005 BAPCPA amendments, Congress expanded the exception to discharge to include not only the debtor's failure to file a "return," but also the debtor's failure to file or give a required "equivalent report or notice." It also added the "hanging paragraph" at the end of § 523(a) that defines "return" as a "return that satisfies the requirements of applicable nonbankruptcy law[,]" including "a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or

9

local law. . . ."

After BAPCPA, courts continue to use the so-called *Beard* test to determine whether the debtor has filed a "return" under federal law. *United States v. Martin (In re Martin)*, 542 B.R. 479, 489-90 (9th Cir. BAP 2015) ("for purposes of determining the dischargeability of federal income tax debt, the 'return' definition added by Congress in 2005 effectively codified the *Beard* test . . . ."); *see also Smith v. U.S. Internal Revenue Serv. (In re Smith)*, 828 F.3d 1094, 1096 (9th Cir. 2016) (stating that the Ninth Circuit "adopted the Tax Court's widely-accepted definition of 'return'" and still follows that definition post-BAPCPA).

We have declined to decide whether the *Beard* test is applicable to state tax returns: "We express no opinion on what 'return' means under applicable nonbankruptcy law when state tax returns are in play, as that issue is not properly before us." *In re Martin*, 542 B.R. at 490 n.7. As to California state tax returns, this question is likely immaterial, because the California definition of a "return" is substantially similar to the *Beard* test. The Board of Equalization has held:

> To qualify as a return, a form 540 must contain sufficient data from which the taxing agency can compute and assess the tax liability of a particular taxpayer . . . . [A] valid return must state specifically the amounts of gross income and the deductions and credits claimed. . . . The disclosure of such data must be provided in a uniform, complete, and orderly fashion. . . . Yet, a return need not be perfectly accurate or complete so long as it

10

purports to be a return, is sworn to as such, and demonstrates an honest and genuine endeavor to satisfy the requirements of the tax law. . . . In any case, a return must be signed by a taxpayer under penalties of perjury.

*In re Appeal of Lavonne A. Hodgson*, Case No. 47679, 2002 WL 245667 *8 (Cal. St. Bd. Eq. Feb. 6, 2002) (quoting *In re Appeals of R. & Sonja Tonsberg*, 1985 WL 15812 *2 (Cal. St. Bd. Eq. Apr. 9, 1985)).

**B.    Mr. Sienega's state tax debts are excepted from discharge because he failed to file state tax "returns" for the affected tax years.**

With this framework in mind, we now consider Mr. Sienega's argument that the Faxes amounted to "returns" under state law, such that the discharge exception in § 523(a)(1)(B) does not apply.

We observe that Mr. Sienega raises new arguments for the first time on appeal. Mr. Sienega only argued to the bankruptcy court that he complied with RTC section 18622(a), and that the state statute is "similar" to IRC section 6020(a), so the Faxes were "returns" under the definition set out in the hanging paragraph of § 523(a). He maintains this position on appeal.

But he also adds a new argument. He now argues for the first time that the Faxes **did not** comply with RTC section 18622, but **did** comply with a different California statute: "[W]hen Rudy sent his filings on July 8 and 9, 2009 he could not and did not satisfy R&T Section 18622, he satisfied California R&T Section 18501, the California statute which requires a

11

taxpayer to file an original return."

We are not obligated to consider arguments raised for the first time on appeal. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) (As a general rule, "an issue will generally be deemed waived on appeal if the argument was not raised sufficiently for the trial court to rule on it." (citation and internal quotation marks omitted)). It is clear, however, that the Faxes were not "returns" under any provision of state law or § 523(a).

### 1. Mr. Sienega did not file "formal" state tax returns in compliance with RTC section 18501.

Mr. Sienega did not file state tax returns that complied with RTC section 18501. That section provides that "Every individual taxable under Part 10 (commencing with Section 17001) shall make a return to the Franchise Tax Board, stating specifically the items of the individual's gross income from all sources and the deductions and credits allowable, if the individual" meets certain criteria for the tax year. Cal. Rev. & Tax. Code § 18501(a). RTC section 18621 lays out certain requirements of form and content:

> [A]ny return, declaration, statement, or other document required to be made under any provision of Part 10 . . . **shall contain, or be verified by, a written declaration that it is made under the penalties of perjury**. Those returns, and all other returns, declarations, statements, or other documents or copies thereof required, **shall be in any form as the Franchise Tax**

**Board may from time to time prescribe** . . . and **shall be filed with the Franchise Tax Board**. The Franchise Tax Board shall prepare blank forms for the returns, declarations, statements, or other documents and shall distribute them throughout the state and furnish them upon application. Failure to receive or secure the form does not relieve any taxpayer from making any return, declaration, statement, or other document required.

Cal. Rev. & Tax. Code § 18621.

Mr. Sienega did not file or submit any document on a form provided by the FTB. In fact, for over a decade, he did not furnish the FTB with any information concerning the applicable tax years. He also never provided a written declaration under penalty of perjury. Therefore, he did not file a "formal" tax return in compliance with California law.

**2.      The Faxes were not informal returns.**

Mr. Sienega argues that the Faxes and his later transmission of the Tax Court Ruling amount to "informal returns." These arguments are unpersuasive.

**a.      The Faxes were not "returns" under the *Beard* test.**

Mr. Sienega argues that, taken together, the Faxes and the Tax Court Ruling were an "informal return" under bankruptcy precedent and the *Beard* test. We disagree.

Mr. Sienega cites a litany of cases for the proposition that various types of reports qualify as a "return" under § 523(a)(1)(B), even in the absence of a formal return. However, none of the cases he cites concerns

13

California law or supports his argument that the Faxes qualify as "informal returns" under California law.

Nor did the Faxes satisfy the *Beard* test. First, and most tellingly, the documents submitted by Mr. Sienega's attorney – the fax cover sheets and the IRS reassessments – did not purport to be state tax returns.

Additionally, none of the documents were executed under penalty of perjury. The Faxes' cover sheets were a mere transmittal and explanatory message from Mr. Sienega's attorney's office, and the IRS reassessments were completed by an IRS examiner. Although the cover sheet stated that Mr. Sienega conceded the accuracy of the IRS reassessment, there is no indication that he made any statement under penalty of perjury. *Cf. In re Hatton*, 220 F.3d at 1061 ("[N]either document [installment agreement or substitute return] was signed under the penalty of perjury. The substitute return was never signed by [debtor], and although the installment agreement contains [his] signature, his signature was not provided under the penalty of perjury.").

Therefore, the Faxes fail the first two prongs of the *Beard* test for "informal returns."

**b.     "Reports" under RTC section 18622(a) are not "returns."**

It seems likely that Mr. Sienega's attorney intended that the Faxes would comply with RTC section 18622(a). That section provides:

(a) **If any item required to be shown on a federal tax return,**

**including any gross income**, deduction, penalty, credit, or tax for any year of any taxpayer **is changed or corrected by the Commissioner of Internal Revenue** or other officer of the United States or other competent authority, or where a renegotiation of a contract or subcontract with the United States results in a change in gross income or deductions, **that taxpayer shall report each change or correction, or the results of the renegotiation, within six months after the date of each final federal determination of the change or correction** or renegotiation, or as required by the Franchise Tax Board, **and shall concede the accuracy of the determination or state wherein it is erroneous**.

Cal. Rev. & Tax. Code § 18622(a) (emphases added). Further, the taxpayer must report the changes or corrections in the manner prescribed by the FTB. *See* Cal. Rev. & Tax. Code § 18622(c).[6]

A "report" submitted under these provisions is not a "return." In a pre-BAPCPA case, the Ninth Circuit held that the debtors' failure to file a report following the IRS's correction to their federal tax returns was not the same as a failure to file a return. *In re Jackson*, 184 F.3d at 1051. It noted that the then-operative California statute distinguished between returns and

---

[6] RTC section 18622(c) provides:

(c) **Notification of a change or correction** by the Commissioner of Internal Revenue . . . that results in a change in any item or the filing of an amended return **must be sufficiently detailed to allow computation of the resulting California tax change and shall be reported in the form and manner as prescribed by the Franchise Tax Board.**

(Emphases added.)

15

reports:

> Section 18451 [the predecessor to RTC section 18622][7] itself even recognizes a difference between reports and returns. Section 18451 requires a report when the IRS makes a reassessment and the reassessment affects the taxpayer's tax liability but requires an amended return when the taxpayer files an amended return with the IRS. Because § 18451 requires a report under some circumstances yet requires an amended return under different circumstances, § 18451 unequivocally distinguishes informal reports from formal returns.

*Id.*; *see Cal. Franchise Tax Bd. v. Jerauld (In re Jerauld)*, 208 B.R. 183, 189 (9th Cir. BAP 1997), *aff'd*, 189 F.3d 473 (9th Cir. 1999) (holding "that the failure to file a report is not the same as a failure to file a required tax return").

Post-BAPCPA, courts have continued to differentiate between "returns" and "reports." In *Maryland v. Ciotti (In re Ciotti)*, 638 F.3d 276 (4th Cir. 2011), the debtor filed Maryland state income tax returns but did not

---

[7] That section provided:

> If the amount of gross income or deductions for any year of any taxpayer as returned to the United States Treasury Department is changed or corrected by the Commissioner of Internal Revenue . . . such taxpayer shall report such change or correction . . . and shall concede the accuracy of such determination or state wherein it is erroneous. Such changes or correction need not be reported unless they affect the amount of tax payable under this part. Any taxpayer filing an amended return with such department shall also file within 90 days thereafter an amended return with the Franchise Tax Board which shall contain such information as it shall require.

Cal. Rev. & Tax. Code § 18451 (repealed).

file reports to notify the state tax authority that the IRS had significantly increased her federal taxable income. The state, after receiving reports directly from the IRS, assessed significant tax liabilities, penalties, and interest. The state argued that the tax debt was excepted from discharge under § 523(a)(1)(B) because it was a tax debt "with respect to which a return, or equivalent report or notice, if required . . . was not filed or given." The Fourth Circuit held that the tax debt was nondischargeable. It flatly rejected the debtor's argument "that Congress amended § 523(a)(1)(B) in order to allow dischargeability of tax debt for debtors who failed to file a required return but nevertheless gave or filed an equivalent notice or report." *Id.* at 280. It stated that "Congress . . . had no apparent motivation to make such a change, and, in any event, the language of the amendment is not susceptible to that reading." *Id.* It held that the required state reports were the type of "equivalent report[s]" covered by the BAPCPA amendment. It considered the factors of the *Beard* test and held that the report required under Maryland law was "the type of report to which Congress intended § 523(a)(1)(B) would apply." *Id.* at 281; *see also id.* at 279-80 ("It is apparent from the changes that Congress determined that the same policy reasons that justify precluding the discharge of tax debt when the debtor failed to file a return also justify precluding the discharge of the tax debt when the debtor failed to file or give a required report or notice corresponding to that debt."). While it held that the reports were

17

"equivalent" to a "return," it never held that the reports actually were "returns."

Courts within this circuit have cited *Ciotti* with approval. *See In re Martin*, 542 B.R. at 485 (relying on *Ciotti*'s analysis of Congressional intent behind § 523(a)(1)(B)); *Stapley v. California ex rel. Franchise Tax Bd. (In re Stapley)*, 609 B.R. 209, 226 (Bankr. N.D. Cal. 2019) (holding that the debtor's failure to file RTC section 18622(a) reports rendered the tax debt nondischargeable and stating that "*Ciotti* involved Maryland statutes which are substantially the same as California's and the *Ciotti* court's reasoning is persuasive and this court will follow it."). We agree with *Ciotti*'s sound reasoning.

A plain reading of the statute also confirms that "return" and "report" are not the same. As discussed above, the 2005 BAPCPA amendments added "or equivalent report" to § 523(a)(1)(B). Under Mr. Sienega's interpretation, an "equivalent report," such as one required by RTC section 18622(a), can also be an "return." This would render "equivalent report or notice" superfluous. We must give full effect to each word in a statute. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001))); *Satterfield*, 569 F.3d at 953 ("Another

'fundamental canon of statutory construction [is] that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000))). Thus, an "equivalent report or notice" cannot be a "return."

In this case, the Faxes align with the requirements of RTC section 18622(a). RTC section 18622(a) reports (1) are required when the IRS makes a change or correction to a federal tax return; (2) must be reported by the taxpayer within six months after the change or correction; and (3) must include the taxpayer's concession of the accuracy or challenge to an error. The Faxes indicated that information "required to be shown on a federal tax return, including any gross income, . . . [was] changed or corrected by the Commissioner of Internal Revenue . . . ." *See* Cal. Rev. & Tax. Code § 18622(a). Mr. Sienega sent the Faxes to the FTB within six months of the Tax Court Ruling. By his own admission to the court, the fax cover sheets "concede[d] the accuracy of the determination . . . ." *Id.* These documents, which largely comport with RTC section 18622(a), are treated as "equivalent reports," not returns. Therefore, his "reports" under RTC section 18622(a) were not "returns" under RTC section 18501 for purposes of § 523(a)(1)(B).

### c. The Faxes did not comply with a state law similar to IRC section 6020(a).

Mr. Sienega argues that he filed a "return" under § 523(a)(1)(B) because he complied with a state law similar to IRC section 6020(a). That section provides that, if a taxpayer fails to file a federal tax return but "consent[s] to disclose all information necessary for the preparation thereof," the IRS "may prepare such return, which, being signed by such person, may be received by the Secretary as the return of such person."

Mr. Sienega contends that RTC sections 18622(a) and 19706,[8] taken together, are virtually identical to IRC section 6020(a). We disagree. Rather, IRC section 6020(a) and RTC section 18622(a) differ in crucial ways:

- IRC section 6020(a) comes into play when the taxpayer fails to file a federal tax return. RTC section 18622(a) applies when the taxpayer's federal income tax is adjusted, whether or not the taxpayer filed a

---

[8] That section provides:

> Any person or any officer or employee of any corporation who, within the time required by or under the provisions of this part, willfully fails to file any return or to supply any information with intent to evade any tax . . . , or who, willfully and with like intent, makes, renders, signs, or verifies any false or fraudulent return or statement or supplies any false or fraudulent information, is punishable by imprisonment in the county jail not to exceed one year, or in the state prison, or by fine of not more than twenty thousand dollars ($20,000), or by both the fine and imprisonment, at the discretion of the court, together with the costs of investigation and prosecution.

Cal. Rev. & Tax. Code § 19706.

federal (or state) return.

- IRC section 6020(a) is invoked only when the taxpayer "consent[s] to disclose" the information needed to prepare a return. The taxpayer's consent is irrelevant to RTC section 18622(a).

- IRC section 6020(a) authorizes the IRS to prepare a return for the taxpayer. RTC section 18622(a) does not contemplate that the FTB will prepare a return for anyone.

- IRC section 6020(a) requires the taxpayer to sign the return prepared by the IRS. RTC section 18622(a) does not require the taxpayer to sign anything. Although RTC section 19076 obligates taxpayers to provide truthful information, the statute does not require a signature.

Accordingly, the Faxes did not constitute a return prepared under a state statute similar to IRC section 6020(a).

Mr. Sienega also argues that, because he cooperated with the FTB, his actions must have satisfied IRC section 6020(a). He points out that IRC section 6020(a) concerns a cooperative taxpayer, and IRC section 6020(b) concerns an uncooperative taxpayer (and is explicitly excluded from the definition of a "return" in the hanging paragraph). He reasons that RTC section 19087(a)[9] is the state equivalent of IRC section 6020(b), so there

---

[9] RTC section 19087(a) provides:

If any taxpayer fails to file a return, or files a false or fraudulent return with intent to evade the tax, for any taxable year, the Franchise Tax Board,

(continued...)

21

must be a state law analogue to IRC section 6020(a).

This argument lacks logic. The fact that California has adopted a statute like IRC section 6020(b) does not imply that California must also have enacted a statute similar to IRC section 6020(a).

### d. Mr. Sienega's submission of information purportedly underlying the Tax Court Ruling was not a stipulated judgment under the "hanging paragraph."

Mr. Sienega argues that, because the hanging paragraph of § 523(a) expanded the definition of "return" to include a "written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal," then his submission of information that formed the basis of the Tax Court Ruling (i.e., the IRS adjustments) suffices as a return. This argument is meritless.

First, Mr. Sienega did not raise this argument in the bankruptcy court. (He only argued that the Tax Court Ruling itself was a "return.") He has waived it on appeal. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d at 992.

Second, a plain reading of the hanging paragraph only concerns a judgment or final order, not information that served some or all of the basis

---

[9](...continued)
at any time, may require a return or an amended return under penalties of perjury or may make an estimate of the net income, from any available information, and may propose to assess the amount of tax, interest, and penalties due. All the provisions of this part relative to delinquent taxes shall be applicable to the tax, interest, and penalties computed hereunder.

for the judgment or order. Mr. Sienega seeks to expand the definition of "return" far beyond what the statutory text allows.

Further, the information relevant to the Tax Court Ruling pertains to Mr. Sienega's federal tax liability. The Tax Court Ruling (and the information supporting it) did not relate to Mr. Sienega's state tax liability. A stipulated judgment fixing the taxpayer's federal tax liability does not establish the taxpayer's state tax liability.

## C.     Mr. Sienega's policy arguments are unavailing.

Mr. Sienega insists that he is an "honest" debtor and that, but for the Faxes, the FTB would not have been able to assess any state taxes against him. In fact, at oral argument, he bemoaned the FTB's "ungrateful" position. This argument ignores the fact that it was Mr. Sienega's failure to file state tax returns as state law requires that delayed the FTB's tax assessments for so many years. He did not submit any information to the FTB about the relevant tax years for over a decade, and only when he was facing federal tax assessments and penalties. Even then, his submissions were not returns with full and complete information concerning his state tax liabilities, but merely the IRS reassessments and a one-paragraph cover sheet. His actions are comparable to those of the debtors in *Smith*, 828 F.3d at 1097 (federal return filed seven years late and only after deficiency assessment), *Hatton*, 220 F.3d at 1061 ("Hatton never filed a return and only cooperated with the IRS once collection became inevitable"), or *Martin*, 542

23

B.R. at 481 (federal returns filed years late and only after threat of IRS levy). His acts were hardly the "honest and reasonable attempt[s] to satisfy the requirements of the tax law" that require "uniformity, completeness, and arrangement that the physical task of handling and verifying returns may be readily accomplished." *In re Hatton*, 220 F.3d at 1061 (referencing the fourth prong of the *Beard* test).

## CONCLUSION

The bankruptcy court did not err in holding that Mr. Sienega's state tax debt was not dischargeable. We AFFIRM.[10]

---

[10] In another appeal which we are deciding concurrently, *Berkovich v. California Franchise Tax Board (In re Berkovich)*, BAP No. CC-20-1025-FLS, the debtor filed formal tax returns but did not submit the RTC section 18622 reports. In this case, Mr. Sienega did not file formal tax returns but did submit reports under RTC section 18622. In both cases, we hold that the tax debts are not dischargeable. Taken together, the two cases stand for the proposition that tax debts are not dischargeable under § 523(a)(1)(B) if the taxpayer failed to file a return, a report under RTC section 18622, or both.